GUSTAVE ANDERSON v. THE THUNDER BAY RIVER BOOM
                                COMPANY.

*Destruction of freehold—Proof of title—General verdict—Negligence.*

1. Destruction of the freehold, as by the washing away of land, is an
   injury for which no one but the owner of the inheritance can recover.

2. A quitclaim deed is no evidence of title if at the time of its execution
   the grantee was in possession and the grantor not.

3. Judgment for injury done by the destruction of the freehold must be
   reversed if the verdict was general while title to a part of the property
   was not fully proved.

4. Requests to charge and refusals thereof need not be noticed by the
   appellate court where they were based on hypotheses contrary to the
   jury's findings.

5. The degree of care required of a party is a question of law for the
   court and should not be left to the jury to determine, as it would be
   by a charge that he must exercise " such a degree of care as the law
   requires."

Error to Alpena.   (Emerick, J.)   April 17.—June 10.

ASSUMPSIT.   Defendant brings error.   Reversed.

*Clayberg & Sleator* for appellant.

*Turnbull, Shields & Dafoe* for appellee.

CHAMPLIN, J.   This is an action on the case, brought by
the plaintiff as owner and occupant of certain parcels of land
bordering on the Thunder Bay river, to recover damages,
which he alleges he has sustained by means of the booms of
the defendant, and its negligent and improper management
of the logs committed to its charge for booming purposes.

The plaintiff in error is a corporation duly organized under
the general laws of the State of Michigan, and has been doing
business therein for several years last past.   Said business
consists in the driving, booming, sorting and delivery of logs
in the waters of Thunder Bay river.   The plaintiff, after
showing title in himself to lots 4 and 5, in section 31, in

township 32 north, of range 7 east, offered in evidence a quit-
claim deed from one Gideon Ellsworth and wife to plaintiff,
dated April 10, 1877, of a portion of lot 1, of section 32, in
township 32 north, of range 7 east, which deed was admitted
in evidence, against objection of defendant's counsel; after
which plaintiff showed that since receiving said deed he had
been in possession of the premises therein described, and had
cultivated and used them.   No further evidence was intro-
duced to show title in plaintiff to said lot 1.

The court permitted the following question to be asked,
and answered against the objection of defendant's counsel:
"In reference to taking away any of your lands in front of
it, state what effect it had upon your lands in taking your
lands away?"   And the court charged the jury that among
the elements which they would have a right to consider in
making up their verdict would be some injury to the shore
of the land itself.   The admission of this testimony and the
instruction to the jury are claimed to be improper, because
the injury sought to be recovered for was a permanent one,
viz., the absolute destruction, by washing away, of a rod or
more of the land itself, as testified to by the plaintiff.   This
was an injury to the freehold, and no one but the owner of
the inheritance could recover for its destruction.   *George v.
Fisk* 32 N. H. 32; *Van Deusen v. Young* 29 N. Y. 9; *Davis
v. Nash* 32 Me. 411; *Curtiss v. Hoyt* 19 Conn. 159; *Hosking
v. Phillips* 3 Exch. 168; *Moyer v. Scott* 30 Mich. 345.

The plaintiff had not shown any title to lot 1, described in
the declaration.   A quitclaim deed from a party, not shown
to have been in possession at the time it was executed, is no
evidence of title; much less when the party claiming under
the deed was already in possession of the land at the time the
deed was given.   The evidence in the case, which is all re-
turned, did not show how much of the shore line was washed
away and destroyed by the abrasion of the logs under defend-
ant's charge in front of each particular parcel of land.   The
verdict of the jury was general, and covered all the damages
upon which proof had been received.   It must therefore have
included damages for the injury to the land upon lot 1 by the

destruction of its shore. For this the plaintiff was not entit-
led to recover without proving title.

The evidence showed that below the plaintiff's land there
was a dam across the river, called the Trowbridge dam, which
was under the control of the defendants, and that the defend-
ants had, above this dam, jammed the logs in its charge so
that when the freshet occurred in June, 1883, the water in
the river was raised and set back, and flooded plaintiff's land,
injuring and destroying his crops, and casting saw-logs upon
his land. And it also appeared in evidence that above the
plaintiff's land there was another dam across the river, not
under the control of defendant [and known as the " Speech-
ley Dam"], and that during this freshet and stage of high
water, some person unknown opened the Speechley dam, and
thereby let out large quantities of water which greatly aug-
mented the flood below, and tended to raise the water on
plaintiff's land much higher than would have occurred had
not the Speechley dam been opened.

In view of these facts the defendant requested the court to
charge the jury as follows : (3) " If the jury believe, from
the evidence, that a portion of the damages to plaintiff's prem-
ises was occasioned by extraordinary freshet or rain-fall, or
by a large quantity of water being freed from the Speechley
dam, without the fault or consent of defendant, no verdict
can be given against this defendant for such damages." This
request was refused. The force of this request, and the
exception to the charge as given, are rendered nugatory by
the special finding of the jury to the third special question
submitted by the defendant, namely : " Would there have
been any damage to plaintiff's premises from extraordinary
rain-falls, or waters escaping from Speechley's dam, had the
logs not been jammed in the river above Trowbridge's dam ?"
To which the jury answered, " No."

It is unnecessary to notice any of the requests to charge,
and the charge itself, based upon facts supposed to exist con-
trary to that found by the answer to the above question. The
fourteenth assignment of error is based upon the instruction
of the court to the jury, in which he uses this language : " The

Boom Company has a right, in carrying on its business, to move this property which is intrusted to its care, down the stream with such reasonable care and diligence as the law requires of a person or corporation engaged in that business;" and again : " Now, the Boom Company itself, in carrying on these operations, has a right to move these logs down the stream, provided it does so with all reasonable care,—such a degree of care as the law requires, as I have stated, of a person or corporation engaged in carrying on that business. But on the other hand, it is liable for injuries which are caused to persons owning lands which lie along that stream, and contiguous to the stream, by reason of its negligent carrying on of that business, or for its direct or willful acts whereby injury is caused."

It is claimed that the rule of law laid down by the court as to the care required of the defendant in conducting its business was left in uncertainty, and unexplained by the court; that it really left it to the jury to determine what was the degree of care the law required. The charge seems to be open to this criticism, and attention is called to it here in order that upon a retrial of the case the error may be avoided. For the reasons above stated there must be a

Reversal of the judgment, and a new trial granted.

CAMPBELL and SHERWOOD, JJ. concurred. COOLEY, C. J. did not sit.