(February 23, 1905.)

WHITNEY v. DEWEY.

[80 Pac. 1117.]

ASSIGNMENT OF ERRORS ON APPEAL—ORDER ON MOTION FOR NEW TRIAL—EXCEPTION ALLOWED BY LAW—DELIVERY OF DEED—WHEN COMPLETE—PAROL EVIDENCE ADMISSIBLE TO SHOW DELIVERY—PAROL EVIDENCE NOT ADMISSIBLE TO ATTACH CONDITIONS TO DEED ABSOLUTE ON ITS FACE—DEEDS IN ESCROW—ESCROW CANNOT BE HELD BY GRANTEE—WRONGFUL TAKING OF DEED BY GRANTEE MAY BE RATIFIED BY GRANTOR.

1. Where a motion for a new trial has been made and the state-ment used on such motion contained an assignment and specifica-tion of errors, and an appeal is taken from the order denying the motion and the original brief of appellant contains no enumeration of errors relied on, but refers to the transcript and discusses such errors, and prior to the argument in the appellate court a supple-mental brief is filed by appellant making a specific enumeration of such errors, the same will be regarded as a substantial com-pliance with the rules of this court and the case will be examined on the merits.

2. Section 4427, Revised Statutes, gives to an aggrieved party an exception to the ruling of the court in granting or overruling a motion for a new trial, and on appeal from such order the ap-pellant is entitled to have the assignment and specification of er-rors contained in his statement used on the hearing of such mo-tion examined and considered by the appellate court.

3. A deed absolute on its face cannot be delivered to the grantee therein named to be by him held in escrow, and a de-livery which purports to be such will operate as absolute and freed from all parol conditions, and title will vest at once.

4. It is a settled principle of law that the evidence of delivery of a deed must come from without the deed; in other words, a deed does not upon its face show delivery, and therefore parol evidence is admissible to show such fact.

5. Parol evidence is inadmissible to show that a deed delivered to the grantee and absolute on its face shall take effect only upon the performance of some condition or the happening of some contingency unexpressed therein.

6. ID.—In such case the vesting of title is determined by the legal effect of the terms of the grant and cannot be controlled by parol evidence.

7. A grantor cannot by warranty deed, absolute on its face, and free from conditions or restrictions, convey such a title to his grantee as will enable the grantee to pass a good title to a specific corporation and at the same time attach such parol conditions to the deed upon its delivery as to preclude the grantee from trans-ferring an equally good title to any other person or corporation.

8. Where B. executes a warranty deed free from any condi-tions or qualifications as to the vesting of title and delivers it to the grantee, W., accompanied with a contemporaneous parol agree-ment to the effect that W. shall form a corporation and deed the property to such corporation and thereupon pay B. $1,000 cash and deliver to B. $5,000 worth of first mortgage bonds of the cor-poration secured on the property so deeded, and the deed was placed in the hands of the grantee to facilitate such transaction;

*held,* that the delivery was absolute and title vested at once in the grantee.

9. Even though a valid delivery of a deed had not been made at the time of its execution, still the grantor may thereafter ratify the wrongful taking of the deed by the grantee after the grantor has acquired complete knowledge of the facts of the transaction, and thereby perfect the title.

(Syllabus by the court.)

APPEAL from District Court in and for Canyon County. Honorable George H. Stewart, Judge.

Plaintiff commenced his action to quiet his title to a certain tract of land situate in the counties of Canyon and Boise, and for a perpetual injunction restraining defendant further asserting any claim in and to the property. From a judgment in favor of the plaintiff and an order denying his motion for a new trial, defendant appeals. Reversed.

W. E. Borah and N. M. Ruick, for Appellant.

Admissibility of evidence under the pleadings: We ask the court to consider, in the first place, the allegations of the complaint and certain objections made to the introduction of evidence under the pleadings. These objections go to the controlling proposition in the case—delivery of the warranty deed. They had alleged upon a written contract, alleged its violation, and they were bound by their allegations. We know of no rule of pleading and practice which will permit an allegation that a deed was delivered under the terms of a written contract and proof of the fact that it was delivered under an oral contract, when the question of delivery is not an incident but goes to the vital controversy in the case and to the very validity of the deed itself. There is an entire variance between the case alleged and the evidence offered in support of it, all of which was objected to, etc. The objection should have been sustained. (*Spader v. McNell,* 130 Cal. 500, 62 Pac. 828.) The evidence must be confined to the issues made by the pleadings. (*Frazier v. Ebenezer Baptist Church,* 60 Kan. 404, 56 Pac. 752; *Westchester etc. Ins. Co. v. Coverdale,* 9 Kan. App. 651, 58 Pac. 1029.) The rule is that the allegations and proofs must

correspond, and the consequence of the rule is another, which is that evidence of the matter or evidence essential to the support of the action cannot be heard unless the complaint contains an averment of said essential matter or evidence. (*Maynard v. Firemen's Fund Ins. Co.,* 34 Cal. 48, 91 Am. Dec. 672; *Stout v. Coffin,* 28 Cal. 65; *Cox v. McLaughlin,* 63 Cal. 207.) In the case below the plaintiff alleged upon a written contract but sought to prove by parol work outside the contract, and it was held to be a variance and the evidence inadmissible. (*Hinkle v. San Francisco Ry. Co.,* 55 Cal. 627.) All prior oral negotiations must be regarded as merged in the written contract. When an action or defense is based upon a contract not in writing and the contract appears upon the trial to be a written one, the action or defense must fail. The converse of this rule would of course be true that if the action is based upon a written contract, proof as to an oral contract is inadmissible. (*Perkins Co. v. Yeoman,* 23 Ind. App. 483, 55 N. E. 782; *Stewart v. Cleveland etc. Ry. Co.,* 21 Ind. App. 218, 52 N. E. 89; *Trueblood v. Shellhouse,* 19 Ind. App. 91, 49 N. E. 47.) In a complaint based on a written instrument, a parol agreement is inadmissible. (*Browning v. Walbrun,* 45 Mo. 477; *Glick v. Weatherwax,* 14 Wash. 560, 45 Pac. 156.) Oral testimony to vary or add to written contract: There is, however, a more forcible and controlling reason why parol evidence was not admissible and could not in this case become admissible under any conditions of the pleadings. This transaction had been reduced to writing. The contract of December 26th had been completed and conclusively bound the parties. All prior negotiations were merged in this written contract, and the parties having seen proper to enter into writing that conclusively bound them, they could neither add to, change or modify the writing thus made. The only criterion of the completeness of the written contract as to a full expression of the agreement of the parties is the writing itself. If it imports on its face to be a complete expression of the whole agreement—that is, contains such language as imports a complete legal obligation—it is to be presumed that the parties here introduced into it every material item and term; and parol evidence cannot be

admitted to add another term to the agreement, although the
writing contains nothing on the particular one to which the
parol evidence is directed.   The rule forbids to add by parol
when the writing is silent as well as to vary where it speaks,
and the law controlling the operation of a written contract be-
comes a part of it and cannot be varied by parol any more than
what is written.   (*Thompson v. Libby,* 34 Minn. 374, 26 N.
W. 1; *Naumberg v. Young,* 44 N. J. L. 333, 43 Am. Rep. 380;
*Hei v. Heller,* 53 Wis. 415, 10 N. W. 620; *Creery v. Hallery,*
14 Wend. 26; *Stone v. Harmon,* 31 Minn. 512, 19 N. W. 88.)
Where parties to an agreement have reduced it to writing, the
writing is presumed to embrace the whole thereof.   (*Mackey
v. Magnon,* 12 Colo. App. 137, 54 Pac. 907; *Ming v. Pratt,* 22
Mont. 262, 56 Pac. 279; *Judson v. Malloy,* 40 Cal. 307.)   Parol
evidence as to the history of a written agreement is not admis-
sible, but the written agreement itself must be taken as the
only expression of the contract between the parties.   (*McIn-
tosh Co. v. Rice,* 13 Colo. App. 393, 58 Pac. 358; *Irving v.
Cunningham,* 66 Cal. 15, 4 Pac. 766; *Liverpool Co. v. T. M.
Richardson Lumber Co.,* 11 Okla. 585, 69 Pac. 938; *Fosyth
Mfg. Co. v. Castlen,* 112 Ga. 199, 37 S. E. 485; *Hand v.
Miller,* 58 App. Div. 126, 68 N. Y. Supp. 531.)   Parol evi-
dence to control legal effect of deed or postpone its opera-
tion: The plaintiff seeks to avoid the effect of this warranty
deed of January 25th by showing an escrow, and this he seeks
to show by parol evidence.   We frankly admit that there must
be assignments of error, and that without such assignments
this court is not bound to consider the appeal.   We therefore
ask the court to recur to the transcript in this case.   The spe-
cifications are set forth in detail, and we believe will be found
to be unnecessarily full and complete.   But in discussing the
matter, the counsel for respondent ignore these assignments.
They do not claim that they are insufficient, but seem to con-
tend that, because they are not repeated in so many words in
the brief, they are not sufficient.   Yet the multitude of author-
ities cited by counsel have absolutely no relevancy except where
the transcript contains no assignment of error.   In the case of

*United States v. Tidball* (Ariz.), 29 Pac. 385, cited, there were no assignments at all in the transcript and the court said: "The transcript contains no assignment of error." But ours does. None of the other cases cited by counsel are under practice similar to ours except where they refer not to the brief, but to the lack of assignments in the transcript or statement. Our statute expressly provides that an order granting or overruling a motion for new trial, a contested motion, is deemed excepted to, and "need not, unless desired by the party objecting thereto, be embodied in a bill of exceptions, but the same appearing in the record or files may be reviewed upon appeal as though settled in such bill of exceptions." (Rev. Stats. 4427.) The appeal in this case is taken from the order overruling the motion for new trial and from the judgment and is brought upon a statement of the case. In this case there was no assignment of error in the overruling of the motion for new trial, and the question was raised as to the power of the court to review the record, but the court held that it could do so and that the statement was the same as a bill of exceptions, and that it would review the matters on admission of evidence, etc. (*Bradbury v. Idaho & O. L. Co.,* 2 Idaho, 239, 10 Pac. 620; *Thiessen v. Riggs,* 5 Idaho, 487, 51 Pac. 107; *Palmer v. Pettingill,* 6 Idaho, 346, 55 Pac. 653; *McEntee v. Cook,* 76 Cal. 187, 18 Pac. 259.) A statement used on motion for new trial may be used on appeal from the judgment for the purpose of determining whether the trial court made any errors of law during the trial. (*Young v. Tiner,* 4 Idaho, 269, 38 Pac. 698.) Where the record is in proper shape and the objection is as to the failure of the brief to comply with the rules of the court, the proper practice is to move to strike the brief from the files and then the court may permit an amendment or reconstruction of the brief upon terms. Here the parties have not only taken time in which to answer the brief, but have fully answered upon the merits and are therefore not in a position to complain. (*Johns v. Ruff,* 12 N. Dak. 74, 95 N. W. 440; *O'Brien v. Miller,* 4 N. Dak. 308, 50 Am. St. Rep. 669, 60 N. W. 841; *Vidger v. Nolin,* 10 N. Dak. 353, 87 N. W. 593; *Campodonico v. Oregon Imp. Co.,* 85 Cal. 218, 24 Pac. 176.)

O. O. Haga and Hawley, Puckett & Hawley, for Respondent.

Appellant has assigned no error in this court on which he relies or seeks a reversal of the judgment entered against him, contrary to the established rules of practice and the rules of this court. Paragraph 1 of rule 6 of this court provides, among other things, that "the brief of appellant and plaintiff in error shall also contain a distinct enumeration of the several errors relied on." This court is by statute authorized and empowered to make rules not inconsistent with the laws of the state for its own government and the transaction of its business. (Rev. Stats., sec. 3863.) But independent of statute every court of record has the inherent power to make rules for the transaction and regulation of its business. (8 Am. & Eng. Ency. of Law, 29.) The court equally with suitors is bound by its rules. They must be construed as statutes are construed. (*Hanson v. McCue,* 43 Cal. 178.) An assignment of error in this court performs the same office as a declaration in a court of original jurisdiction. It would be just as regular and proper for the circuit court to render a judgment in a cause where there was no declaration, as for this court to affirm or reverse a judgment where there is no assignment of errors. (*Williston v. Fisher,* 28 Ill. 43.) The failure to file assignment of errors must entail an affirmance of the judgment or decree. (*McNeill v. Kyle,* 86 Ala. 338, 5 South. 461; *Sutherland v. Putman* (Ariz.), 24 Pac. 320; *Globe etc. Co. v. Boyum,* 3 N. Dak. 538, 58 N. W. 339; 2 Ency. of Pl. & Pr., pp. 922-927.) Where appellant's brief does not contain a specification of the errors relied on, numbered and set out separately and particularly, as provided by supreme court rule 10, section 3, subdivision b, the judgment will be affirmed. (*Rehberg v. Greiser,* 24 Mont. 487, 62 Pac. 820, and on rehearing, 63 Pac. 41; *Schatzlein Paint Co. v. Godin,* 24 Mont. 483, 62 Pac. 819; *Shilling v. Curran* (Mont.), 76 Pac. 998, 1003.) All exceptions taken in the lower court will be treated as waived unless they are assigned as errors in this court. (*Purdy v. Steele,* 1 Idaho, 216; *Brovelli v. Bianchi,* 136 Cal. 612, 69 Pac. 416; *Squires v. Foorman,* 10 Cal. 298; *Haggin v. Clark,* 28 Cal. 162; *Haas v. Pueblo Co.,* 5 Colo. 125.) The fact that the transcript contains certain specifica-

tions of error urged on motion for a new trial is not sufficient on appeal. The rules of this court require that the errors must be set out' in the brief of counsel. Errors urged on motion for a new trial may be waived on appeal, and other errors urged in their stead. (*Pearson v. Flannagan,* 52 Tex. 266; *Chappell v. Missouri Pac. R. R. Co.,* 75 Tex. 82, 12 S. W. 977; *San Antonio etc. R. Co. v. Adams,* 6 Tex. Civ. App. 102, 24 S. W. 839; *Hutton v. Reed,* 25 Cal. 479; *Brewster v. Johnson,* 51 Cal. 222; *McCormick v. Phillips,* 4 Dak. 506, 34 N. W. 39; *Syndicate Imp. Co. v. Bradley,* 6 Wyo. 171, 43 Pac. 79, 44 Pac. 60; *Ashley v. Martin,* 50 Ala. 537; *Ashman v. Flint,* 90 Mich. 567, 51 N. W. 645; *Bishop v. Middleton,* 43 Neb. 10, 61 N. W. 129, 26 L. R. A. 445; *Daggs v. Hoskins* (Ariz.), 52 Pac. 350; *Penny v. Fellner* (Okla.), 50 Pac. 123; *Gavin v. Gavin,* 92 Cal. 292, 28 Pac. 567; *Kyle v. Craig,* 125 Cal. 107, 57 Pac. 791; *Jay v. Zeissness,* 6 Okla. 591, 52 Pac. 928.) Alleged errors in findings of fact must be specifically pointed out to secure a review thereof. (*Metropolitan Nat. Bank v. Rogers,* 53 Fed. 776; *Richardson v. Walton,* 61 Fed. 535; *Nading v. Elliott,* 137 Ind. 261, 36 N. E. 695; *Appeal of Dabney,* 120 Pa. St. 344, 14 Atl. 158; *Luttlopp v. Heckmann,* 70 N. J. L. 272, 57 Atl. 1046.) An assignment that the court erred in its conclusions of law is not available, unless all the conclusions of law be wrong. (*Vinall v. Hendricks* (Ind. App.), 71 N. E. 682; *City of Lincoln v. Bailey* (Neb.), 99 N. W. 830; *Bitter v. Mouat Lumber Co.,* 27 Colo. 120, 59 Pac. 403.) The record shows that appellant in due season made motion for a new trial, which was overruled by the court. The order of the court overruling appellant's motion for a new trial is not assigned as error on appeal, nor referred to in any manner in appellant's brief. It is well settled that this court will not review the ruling of the lower court in passing on this motion, unless such ruling is assigned as error on appeal. (*Chicago etc. R. Co. v. German Ins. Co.,* 2 Kan. App. 385, 42 Pac. 594; *Case v. Jacobitz,* 9 Kan. App. 842, 62 Pac. 115; *Whittinger v. Nelson,* 29 Ind. 441; *Bartholomew v. Preston,* 46 Ind. 286; *Pierce v. Manning,* 2 S. Dak. 517, 51 N. W. 332.) We contend that a re-examination of the issues of fact cannot be had in this court, except on appeal

from an order overruling a motion for a new trial and the assignment of such ruling as error in this court, and that appellant has not done.   The statement used on motion for a new trial, when used on an appeal from a judgment, takes the place of a bill of exceptions only, and only errors of law therein contained, if properly specified, can be considered.   (Rev. Stats., sec. 4426; *Carpenter v. Williamson,* 25 Cal. 154; *United States v. Trabing,* 3 Wyo. 147, 6 Pac. 721; *Withers v. Kemper,* 25 Mont. 432, 65 Pac. 422.)   Findings of fact by a court sitting without a jury is equivalent to a verdict, and hence will be disturbed only when it is clearly erroneous or shown that the judge was influenced by improper motives.   (*Spaulding v. Coeur d'Alene Ry. Co.,* 5 Idaho, 528, 51 Pac. 408; *Claybaugh v. Henessy,* 21 Ill. App. 124; *United States v. Adams,* 73 U. S. 101, 18 L. ed. 792; *Murdock v. Clarke,* 90 Cal. 427, 27 Pac. 275; *Murphy v. Cunningham,* 1 Colo. 467; *Lynch v. Grayson,* 5 N. Mex. 487, 25 Pac. 992; *San Fernando etc. Co. v. Humphrey,* 130 Fed. 298.)   The declarations of White against his title under such a deed are admissible, not only as against himself but as against parties claiming under him, is a familiar principle. Subsequent claimants are considered as standing in his place, and as having taken the title *cum onere,* subject to the same charges and restrictions which attached to it in his hands. (*Stanley v. Green,* 12 Cal. 148; *Daly v. Josslyn,* 7 Idaho, 657, 65 Pac. 442.)   This deed was not delivered to White, in the sense that such term is used in the conveyance of real property. There was no intention on the part of either White or Beery that the title should pass.   Delivery, as used with reference to a conveyance of land, does not mean a manual delivery alone. The important element always requisite to pass title to the grantee is the intent.   (9 Am. & Eng. Ency. of Law, 154; *Black v. Sharkey,* 104 Cal. 279, 37 Pac. 939; *Branson v. Oregonian Ry. Co.,* 11 Or. 161, 2 Pac. 86; *Lee v. Richmond,* 90 Iowa, 695, 57 N. W. 613; *Steel v. Miller,* 40 Iowa, 403, 406; *Berkshire v. Peterson,* 83 Iowa, 197, 48 N. W. 1035; *Head Bros. v. Thompson,* 77 Iowa, 267, 42 N. W. 188; *Bunn v. Stewart,* 183 Mo. 375, 81 S. W. 1091; *Hastings v. Vaughn,* 5 Cal. 315.)   Delivery is a question of fact to be determined by the jury, and depends

more upon the intention of the parties than upon the mode of fulfilling the intention. To the same effect, *Gilmore v. Morris,* 13 Mo. App. 114; *Shaw v. Cunningham,* 16 S. C. 631; *Lindsay v. Lindsay,* 11 Vt. 621; *Hurlburt v. Wheeler,* 40 N. H. 73; *Farlee v. Farlee,* 21 N. J. L. 279; *Stoney v. Wenterhalter* (Pa.), 11 Atl. 611; *Stephens v. Buffalo etc. R. R. Co.,* 20 Barb. 332. To render a deed operative to pass title, there must be not only a delivery of the deed by the grantor, but also an acceptance thereof by the grantee. Acceptance of the conveyance by the grantee is as essential as the delivery by the grantor, and where acceptance is not proven, and the facts do not justify the presumption of law that the grantee has accepted, the title does not pass. (*Moore v. Flynn,* 135 Ill. 74, 79, 25 N. E. 844; *Metcalf v. Brandon,* 60 Miss. 685; *Koehler v. Hughes,* 148 N. Y. 507, 42 N. E. 1051; *Bummerman v. Jennings,* 101 Ind. 253; *Commonwealth, Thompson's Heirs etc. v. Jackson, etc.,* 10 Bush (Ky.), 424; *Meigs v. Dexter,* 172 Mass. 217, 52 N. E. 75; *Hawkes v. Pike,* 105 Mass. 561, 7 Am. Rep. 554; *Comer v. Baldwin,* 16 Minn. 172; *Stephens v. Buffalo etc. Ry. Co.,* 20 Barb. 332; *Steffian v. Milmo Bank,* 69 Tex. 513, 6 S. W. 823; *Wheeler & Wilson Mfg. Co. v. Briggs* (Tex.), 18 S. W. 555; *Wiggins v. Lusk,* 12 Ill. 132; *Woodbury v. Fisher,* 20 Ind. 387, 83 Am. Dec. 325; *Herbert v. Herbert,* 1 Ill. (Breese) 354; *McGehee v. White,* 31 Miss. 41; *Deere, Wells & Co. v. Nelson,* 73 Iowa, 187, 34 N. W. 809; *Higman v. Stewart,* 38 Mich. 513, 524; *Jummel v. Mann,* 80 Ill. App. 288; *Stevens v. Stevens,* 150 Mass. 557, 23 N. E. 378.) That evidence of delivery and acceptance are admissible under the pleadings of this case was directly passed upon in the cases of *Leppock v. National Bank of Md.,* 32 Md. 136; *Kearney v. Jeffries,* 48 Miss. 343, 359; *McGehee v. White,* 31 Miss. 41; *Bullitt, Miller & Co. v. Taylor,* 34 Miss. 708, 69 Am. Dec. 412; *Commonwealth v. Jackson,* 73 Ky. (10 Bush) 424; 2 Washburn on Real Property, 581; *Tuttle v. Turner,* 28 Tex. 759.

AILSHIE, J.—A motion was made in this case to strike from the files the "supplemental brief of appellant," upon the grounds that the same was filed without permission of court having been obtained, and for the further reason that there is no authority in law or any rule of this court for the filing of

a supplemental brief. It appears that within the time prescribed by the rules of this court the appellant served his brief upon the respondent, but the original brief filed by appellant contains no enumeration of errors relied on for a reversal of the judgment. The original brief, however, discusses errors complained of and refers to the page and folio of the transcript containing the same. Appellant made a motion for a new trial in the lower court, and his statement on motion for new trial contains specific assignments of error covering nine pages of the transcript, and are directed at both the insufficiency of the evidence to justify the findings, decision and judgment of the trial court as well as errors of law occurring at the trial in the admission and exclusion of evidence. After the service of the original brief and prior to the calling of the case for oral argument, appellant prepared, served and filed what he termed a "supplemental brief of appellant," in which he specifically enumerates the errors relied on for a reversal of the judgment, and it is this brief that respondent seeks to have stricken from the files. Respondent has furnished us with a great many authorities to the effect that a failure on the part of the appellant to assign errors is fatal to the appeal, and that in such a case the appellate court cannot and will not examine the transcript for the purpose of ascertaining whether or not error has been committed. *Purdy v. Steele,* 1 Idaho, 216, holds that "all exceptions in the court below will be treated as waived, unless the matters so excepted to are assigned as error in this court," and from the opinion in that case it seems that no assignment of error was ever made either in the trial court on motion for a new trial or contained in the statement or enumerated in the brief in this court. *United States v. Tidball* (Ariz.), 29 Pac. 385, *Sutherland v. Putman* (Ariz.), 24 Pac. 320, and *Charonleau v. Shields & Price* (Ariz.), 76 Pac. 821, are all from the Arizona supreme court, and rest upon the peculiar statutes of that territory. An examination of these cases discloses the fact that there is a statute in Arizona requiring the assignment of errors to be filed with the clerk of the trial court prior to the printing of the transcript, and the supreme court has held that such statute is mandatory. *Haas v. Board of Commissioners,* 5

Colo. 125, holds that a failure to file any assignment of errors in the appellate court, either at the time of filing the transcript or thereafter, is fatal, and that the appeal will be dismissed. There a court rule requires the appellant to assign errors at the time of filing the transcript of the record, and provides that the appeal or writ of error will be dismissed for failure to do so. *Rehberg v. Greiser,* 24 Mont. 487, 62 Pac. 820, and 63 Pac. 41, is from the supreme court of Montana, and is a case where the appeal was dismissed for failure to set out any specification of errors, and is founded on a rule very similar to paragraph 1 of rule 6 of this court; but the court there held that the filing of such an enumeration of errors was not jurisdictional, and in the course of opinion referred to the fact that in other cases the court had disallowed motions to dismiss for such failure. It was held, however, that the particular case then under consideration did not present such facts as would justify them in disallowing the motion. *Brovelli v. Bianchi,* 136 Cal. 612, 69 Pac. 416, simply holds that upon an appeal from an order denying a motion for a new trial "where the evidence is not pointed out in the brief of appellant and no suggestion made as to the respects wherein the evidence fails to support the findings," the court "will not endeavor to discover the respects wherein the evidence is insufficient, but will presume that it supports every material finding of fact." *Schroeder v. Schmidt,* 74 Cal. 459, 16 Pac. 243, holds that an "error committed in granting a nonsuit . . . . cannot be reviewed on an appeal from an order refusing a new trial, unless it was excepted to on the trial and specified as error in the statement or bill of exceptions." The numerous other authorities cited by respondent on this point are practically to the same effect as those just reviewed. It does not appear from these authorities that the courts are inclined to refuse to examine a case on appeal where the errors have been assigned and specified in the statement on motion for new trial and are contained in the transcript on appeal, even though they are not specifically enumerated in the brief. In this case, however, appellant has substantially complied with the rule in filing his supplemental brief enumerating the errors prior to the case being called for argument in this court.

Respondent also contends that the appeal from the order denying the motion for a new trial cannot be considered in this court on the ground that it has not been urged or assigned as error on appeal. Section 4427, Revised Statutes, allows an aggrieved party an exception as a matter of law to an order denying his motion for a new trial, and since the appellant had assigned his errors in the statement and bill of exceptions used on the hearing of the motion, and had pointed out the insufficiency of the evidence to support certain findings, as well as the errors of law committed at the trial, he is entitled now upon his appeal from such order to have those assignments of error examined and considered in this court. It is true that some of the courts, to whose decisions counsel have called our attention, have established a contrary rule; but our appellate practice is cumbersome enough at best, and we are not inclined to place such a construction on the statute and hold to such a technical observance of the rules of this court as will make appeals any more difficult of prosecution than they are at present.

For the foregoing reasons respondent's motion will be denied and the case will be examined on its merits.

This action was commenced by plaintiff, W. G. Whitney, praying for a decree of the court quieting his title in and to lots 1, 2, 3, 5 and 6, in section 22, township 7 north, range 1 west, Boise meridian, and situate in Boise and Canyon counties, and for a perpetual injunction against the defendant thereafter asserting any claim whatever in or to the premises described. The defendant answered denying plaintiff's right and title and setting up title in himself in and to an undivided one-half interest in the premises described in the complaint. In order to properly understand this case it is necessary to recite somewhat at length the history of the dealings and transactions between the plaintiff, Whitney, Willard White (defendant's grantor) and I. R. Beery (the grantor to both the plaintiff and White). The contract out of which all subsequent troubles seem to have grown was entered into on the seventh day of September, 1899, between the plaintiff Whitney and Willard White, and is as follows:

"This agreement witnesseth: Whereas, W. G. Whitney and Willard White having acquired a dam, log storage and power site on the Payette river, at a point called the Black Rock Canyon about six miles above the town of Emmett, in Canyon County, Idaho, and,

"Whereas, it is proposed to secure sufficient funds with which to erect a dam at said site, about thirty feet in height, with a view to creating a large water-power to be used in sawing lumber, elevating water upon both sides of the Payette river, for the purpose of irrigation, and for generating electric power to be utilized for railway and such other purposes as may be found feasible,

"Now, therefore, in consideration of the premises, each of the parties hereto agrees to give his best efforts to the immediate accomplishment of the above-mentioned project, and does agree that the parties hereto are to own an equal interest in such undertaking, share and share alike.

"It is further agreed that in the event the said White shall fail to raise sufficient funds to construct said dam, or fails to make such progress · as shall be satisfactory to said Whitney within one year from the date thereof, the said White agrees to assign all his right, title and interest in the same to said Whitney.

"Witness our hands and seals this 7th day of September, 1899.                    W. GARRET WHITNEY.
                              "WILLARD WHITE.

"Witnessed by:
          "BEN I. BLOCH."

According to the testimony, White, in pursuance of the term of the contract of September 7th, went east for the purpose of raising money and procuring a contract for the proposed dam site, and on the twenty-sixth day of December of the same year entered into a contract with I. R. Beery of Minneapolis, Minnesota, as follows:

"This agreement made and entered into this 26th day of December, in the year of our Lord one thousand eight hundred and ninety-nine.

"Between I. R. Beery of Minneapolis, Minnesota, the party of the first part, and Willard White of Boise, Idaho, party of the second part,

"Witnesseth, that the said party of the first part for and in consideration of the covenants and agreements on the part of the said party of the second part hereinafter contained, agrees to sell and convey unto the said party of the second part, and the said second party agrees to buy all those certain lots, pieces and parcels of land situate in the counties of Canyon and Boise, in the state of Idaho, and more particularly described as follows, to wit: Lots one (1), two (2), three (3), five (5) and six (6) of Section twenty-two (22), Township seven (7) North, Range one (1) West, B. M., for the sum of six thousand dollars.

"And the said party of the second part in consideration of the premises agrees to pay to the said party of the first part the sum of six thousand dollars, to wit:

"One thousand dollars in cash on or before February 1st, 1900, and five thousand dollars in first mortgage bonds in a corporation to be formed for the purpose of developing a power plant at a point upon the above described property known as the Black Rock Canyon, said bonds to be issued upon said property and upon such improvements as shall be placed thereon.

"And the said party of the second part agrees to pay all state and county taxes or assessments of whatsoever nature which are now or may become due on the premises above described.

"In the event of failure to comply with the terms hereof by the said party of the second part, the said party of the first part shall be relieved from all obligations in law or equity to convey said property and the said party of the second part shall forfeit all right thereto at the option of the party of the first part. And the said party of the first part on receiving such payment at the time and in the manner above mentioned agrees to execute and deliver to the said party of the second part or to his assigns a good and sufficient deed for the conveying and assuring to the said party of the second part the title to the above described premises free and clear of encumbrances other than the taxes hereinbefore mentioned. And it is understood that the aforesaid stipulations are to apply to and bind the heirs, execu-

tors, administrators and assigns of the respective parties and that the said party of the second part is to have immediate possession of said premises.

"In witness whereof the said parties have hereunto set their hands and seals the day and year first above written.

"I. R. BEERY.
· "WILLARD WHITE."

Thereafter, and on the twenty-fifth day of January, 1900,. I. R. Beery and wife made and executed their warranty deed to the entire tract of land and premises described in the complaint in this action, and in such deed named Willard White as the grantee, and on the date of its execution the deed was placed in the hands of grantee White, at the city of Minneapolis, and was thereafter by White brought back to the state of Idaho, and has ever since been in White's possession and control. As to whether or not the deed of January 25th was ever actually delivered within the contemplation of law is a vital question in this case.

The next important step in the course of these transactions occurred on April 25, 1900, when Beery and White entered into a new agreement which by its terms provided that it should take the place of the former agreement of date December 26th. The important part of the agreement of April 25th, and that which has any special bearing upon the matters in controversy in this action, is as follows:

"Witnesseth, that whereas I. R. Beery, party of the first part, is the equitable owner of the real property hereinafter described, while Willard White, party of the second part, holds the legal title thereto by virtue of a deed heretofore executed by the said I. R. Beery and wife, under agreement heretofore entered into by and between said Beery and said White, and

"Whereas, it is desired by the parties to enter into a new and different agreement at this time in relation thereto,

"Now, therefore, for and in consideration of the mutual covenants hereinafter contained, and to be by said parties paid, kept and performed, it is agreed: That said Willard White has this day become the owner, absolute, of the equitable as well

as the legal title to a one-half interest, undivided, in the property hereinafter described for the consideration of seven hundred and fifty dollars ($750.00), one hundred and fifty dollars of which said gross sum has this day been paid, the receipt whereof by said Beery is hereby acknowledged; one hundred dollars is to be paid on or before May 15th, 1900, and the remainder of said sum of seven hundred and fifty dollars, to wit, five hundred dollars, is to be paid on or before January 1st, 1901."

Thereafter, and on the thirteenth day of May, 1901, the plaintiff, Whitney, secured from Beery a quitclaim deed to the lands and premises in controversy, the title to which he seeks to quiet by this action, and which title is derived from Beery through the medium of this deed alone. On the seventh day of August, 1901, White executed and delivered a quitclaim deed of an undivided one-half interest in and to the property described, to R. M. Cobban and George H. Casey, and on September 27, 1902, Cobban and Casey, by a quitclaim deed, conveyed their undivided one-half interest to the defendant, Dewey. Dewey traces his title through a chain of quitclaim deeds back to the warranty deed executed by Beery and wife on January 25, 1900.

At the trial the court permitted the plaintiff to introduce the testimony of I. R. Beery and other witnesses, showing a parol agreement and understanding had between White and Beery at the time of the execution of the deed of January 25th, and by the terms of which agreement it is contended that the deed of January 25th was delivered upon conditions thereafter to be performed and complied with by the grantee, White, and on the failure to perform which no title should pass under the deed. The defendant objected to the introduction of this class of testimony upon the grounds that the complaint alleges that the deed was placed in the hands of White with the understanding that the same should take effect and pass title from Beery to White only upon a compliance by White with the terms and conditions of the contract of December 26th, and that to permit parol testimony would be to contradict a written contract, and for the further reason that parol evidence is not admissi-

ble for the purpose of showing the terms and conditions under which a deed, absolute on its face, was delivered into the possession of White. The substance of the evidence given on this point is fairly stated by the grantor, Beery, in his testimony as follows:

"Mr. White first visited me about the 26th of December, 1899, when this contract was executed. Then he returned on the 25th of January, at the time we made the deed. At this time I executed and delivered to him this deed, placed it in his possession personally at the time he was in Minneapolis and he carried it back to Idaho. I placed it in his hands so that the matter could be closed up promptly in connection with the transferring of the property to the corporation that was contemplated; these bonds were to be paid and an issue of bonds on this property and power plant and ditches, etc., contemplated. I was to be paid when the matter was consummated and the bonds ready to be issued. The deed was placed in his hands to facilitate the matter and so that we all could save time. He could pay me when he used the deed just as though I sent the deed to him to hold. It was a matter of trust with me."

Other witnesses testified to subsequent statements made by White to the same effect. The deed of January 25th from Beery to White was without any condition or reservation whatever expressed on the face of the instrument, and so far as can be gathered from the indenture itself, it is absolute. It is admitted that this deed was delivered by the grantor into the personal and manual possession and control of the grantee, and passed completely from the control and direction of the grantor. The contention made by plaintiff on this point is about as follows: That under the agreement of December 26th, White was expected to form a corporation for the construction of a big dam on the Payette river with its site upon the lands in controversy for the purposes of power and irrigation, and that as soon as the corporation should be organized the title to this property should be conveyed to such corporation, and thereupon Beery should be paid the sum of $1,000 and deliver $5,000 worth of first mortgage bonds to be issued

by such corporation in full payment for the property. And the plaintiff contends that the deed of January 25th was executed and delivered under the terms and conditions of the agreement of December 26th, and that it was mutually understood and agreed between the grantor and grantee at the time that the corporation should be formed, and that accordingly this deed was delivered to White in order to facilitate the transaction and enable White to immediately convey the property to the corporation and perfect the title and qualify the corporation to issue the bonds in payment of the balance of the purchase price.

As above observed, this deed was delivered to the grantee and contained upon its face no conditions whatever precedent to the vesting of title. Appellant insists that the facts disclosed in this case show an absolute delivery of the deed and that parol evidence was inadmissible to attach any condition to the vesting of title under such a deed.

It is a well-settled principle of law that a deed cannot be delivered by the grantor to the grantee therein named to be held by the grantee in escrow. If such thing be done the result is that title vests at once in the grantee. The holder of an escrow must be a third party, who for such purpose becomes the agent of both the grantor and grantee.

In 13 Cyclopedia, 564, the writer of the text says: "A deed cannot be delivered as an escrow to the grantee, and a delivery which purports to be such will operate as an absolute one. This rule, however, applies only to those deeds which are upon their face complete contracts requiring nothing but delivery to make them perfect, and does not apply to those which upon their face import that something besides delivery is necessary to be done in order to make them complete." The writer cites many authorities in support of that text.

In 1 Devlin on Deeds, section 315, it is said: "A deed cannot be delivered to the grantee as an escrow. If it be delivered to him, it becomes an operative deed, freed from any condition not expressed in the deed itself, and it will vest the title in him, though this may be contrary to the intention of the parties. One of the grounds upon which this rule is based is that

parol evidence is inadmissible to show that the deed was to take effect upon condition." The author thereupon proceeds to quote as a part of the text, and with approval, from the opinion of Harris, J., in *Lawton v. Sager,* 11 Barb. 349, in whose opinion the following language is used: "Whether a deed has been delivered or not is a question of fact upon which, from the very nature of the case, parol evidence is admissible. But whether a deed, when delivered, shall take effect absolutely or only upon the performance of some condition unexpressed therein, cannot be determined by parol evidence. To allow a deed absolute upon its face to be avoided by such evidence would be a dangerous violation of a cardinal rule of evidence."

In *Braman v. Bingham,* 26 N. Y. 483, the court of appeals said: "The reason given for the rule excluding parol evidence of a conditional delivery to the grantee applies to all cases where the delivery is designed to give effect to the deed, in any event, without the further act of the grantor. 'When the words are contrary to the act, which is the delivery, the words are of none effect.' (Coke's Littleton, 36a.) 'Because then a bare averment, without any writing, would make void every deed.' (Cro. Eliz. 884.) 'If I seal my deed and deliver it to the party himself, to whom it is made, as an escrow upon certain conditions, etc., in this case let the form of the words be what it will, the delivery is absolute, and the deed shall take effect as his deed presently.' (Sheppard's Touchstone, 59; *Whyddon's Case,* Cro. Eliz. 520; Cruise's Digest, title 33, Deeds, c. 2, par. 80.) If a delivery to the grantee can be made subject to one parol condition, I see no ground of principle which can exclude any parol condition. The deed having been delivered to the grantee, I think the parol evidence that the delivery was conditional was properly excluded."

The authorities to the foregoing effect might be multiplied, of which the following appear to be some of the leading cases: *Blowitt v. Boornum,* 142 N. Y. 357, 40 Am. St. Rep. 600, 37 N. E. 120; *Darling v. Butler,* 45 Fed. 332, 10 L. R. A. 469; *Miller v. Fletcher,* 27 Gratt. 403, 21 Am. Rep. 359; *Richmond v. Morford,* 4 Wash. 337, 30 Pac. 242, 31 Pac. 513; *Hubbard v. Greely,* 84 Me. 340, 24 Atl. 799, 17 L. R. A. 511.

In the latter case it was said: "An escrow is a deed delivered to a stranger, to be delivered by him to the grantee upon the performance of some condition, or the happening of some contingency, and the deed takes effect only upon the second delivery. Until then the title remains in the grantor. And if the delivery is in the first instance directly to the grantee, and he retains the possession of it, there can be no second delivery, and the deed must take effect on account of the first delivery, or it can never take effect at all. And if it takes effect at all, it must be according to its written terms. Oral conditions cannot be annexed to it. It will therefore be seen that a delivery to the grantee himself is utterly inconsistent with the idea of an escrow. And it is pretty well settled, by all the authorities, ancient and modern, that an attempt to thus deliver a deed as an escrow cannot be successful; that in all cases where such deliveries are made, the deeds take effect immediately and according to their terms devested of all oral conditions."

Counsel for respondent contend that while there was a manual delivery of the deed, there was no intention to pass title, and that on that theory of the case the evidence admitted was proper and competent to show such fact. While it is not directly contended that the grantee can hold a deed in escrow from his grantor, the argument of counsel as applied to the facts of this case would amount in the end to such a position. The leading authorities cited by respondent in support of this position are 9 Am. & Eng. Ency. of Law, 154; *Black v. Sharkey,* 104 Cal. 279, 37 Pac. 939; *Lee v. Richmond,* 90 Iowa, 695, 57 N. W. 613; *Steel v. Miller,* 40 Iowa, 403; *Bunn v. Stewart,* 183 Mo. 375, 81 S. W. 1091; *Hastings v. Vaughn,* 5 Cal. 315.

In 9 American and English Encyclopedia of Law, *supra,* under the heading of "What is Delivery—(c) A Question of Intention," the author says: "The real test of delivery is this: Did the grantor, by his acts or words, or both, intend to devest himself of title? If so, the deed is delivered." By the foregoing language we do not understand the writer to mean that where the question of the delivery of a deed arises, parol testimony may be introduced tending to show the intention of the

parties to such an extent as to control the vesting of title contrary to the express written language of the deed itself; or, in other words, attach conditions to the deed, and, indeed, the authorities cited by the author in support of the text do not go to such an extent.

Counsel quote at length from *Black v. Sharkey, supra,* where the court uses language that would indicate the view that evidence might be introduced to prove that the parties did not intend the deed should take effect according to its terms; but it should be observed that in that case the only question under consideration, and the only one decided, was whether or not parol evidence might be introduced to show that the deed which had been duly executed and was found in the possession of the grantee had ever been in fact delivered. The opinion in that case is by the court commissioners, and makes no reference to the former case of *Mowry v. Heney,* 36 Cal. 471, 25 Pac. 17. The latter opinion was by the court, and it was there expressly held that "when an absolute deed has been delivered to the grantee, the title becomes vested free from any condition, and its operation cannot be defeated by parol proof of an intention on the part of the grantor, known to the grantee, that it should not take effect except in event of the grantor's death; nor is parol evidence admissible to show that the delivery of the deed to the grantee was subject to any condition not expressed therein." We cannot, therefore, view the Black-Sharkey case as in any way overruling or modifying *Mowry v. Heney. Hastings v. Vaughn* was to the same effect as the latter case.

In *Lee v. Richmond,* the Iowa court held that there had been no delivery of the deed and that the instrument had reached the hands of the grantee not by way of delivery as a consummation of the transaction, but for inspection and approval of another person; the court saying: "The deed was not to be regarded as delivered unless the settlement attempted was approved by Fulton, and, as it was not approved by him, there was never, in law, any delivery, and the deed is without effect."

*Steele v. Miller* was a suit apparently founded on fraud in the transaction, and the court held that the minds of the parties had never met on the question of a delivery, and that no

legal delivery ever took place. The evidence in the case appears, however, to be directed at the specific question of delivery alone.

In *Bunn v. Stewart,* a father appears to have executed deeds in favor of certain of his children and grandchildren, with the intention of retaining them until such future time as he saw fit to deliver them in the distribution of his estate, but later he became entangled in divorce proceedings and placed certain of the deeds in controversy in the hands of two of the grantees with instructions to hold them until he called for their return, but the grantees, contrary to his instructions, placed them of record, and the supreme court of Missouri held upon that state of facts that no legal delivery ever took place.

The extent to which the intention of the parties enters into the act of delivery of a deed is very fairly stated by the author in 13 Cyclopedia, 561, and the authorities cited in support thereof. It is beyond controversy that the evidence of delivery must come from without the deed. In other words, a deed never shows upon its face nor by the terms thereof a delivery, and parol evidence thereof must necessarily be admitted when the question of delivery arises. And it will, perhaps, often be difficult to accurately determine the exact extent to which the intention of the parties is admissible as to the ultimate result of devesting the grantor of title, but such testimony should never be considered by the court to the extent of governing and controlling the express terms of the instrument where it is clear that a delivery has been made, even though the parties have mistakenly supposed the legal effect would be different. Of course such evidence would be competent if it should be shown that under no circumstances and in no event and under no conditions was the title ever to pass from the grantor; because such a showing would disprove a legal delivery. It would show a failure to consummate the contract and sale of the property. But where it is the intention of the parties for the title to pass upon *any contingency* or in *any event* from the grantor to the grantee and the deed is delivered to the grantee, absolute on its face, then the vesting of title becomes a question

of law and must date from the delivery; and since the grantee cannot act as the agent of both himself and the grantor for the purpose of a second delivery, title must necessarily have passed upon the original delivery. This rule is very clearly stated by the New York court in *Braham v. Bingham, supra,* where it was said: "The reason given for the rule excluding parol evidence of a conditional delivery to the grantee applies to all cases where the delivery is designed to give effect to the deed, in any event, without the further act of the grantor." (See, also, *Hubbard v. Creely, supra.*)

In this case, giving the respondent the most favorable construction that can possibly be placed upon the evidence, it was the intention of the grantor, Beery, to vest title in his grantee, White, so as to enable the grantee to transfer a perfect title to the proposed corporation. Beery expected to receive $5,000 worth of first mortgage bonds of the corporation as a balance of payment of the purchase price of the property. Such bonds would have been valueless to Beery unless the corporation could secure a good and perfect title to the property on which the mortgage bonds were to issue. Now, then, the question arises: Could the grantor, Beery, by warranty deed, absolute on its face, convey such a title to his grantee as would enable the grantee to pass a good and perfect title to the corporation, and at the same time attach such parol conditions to the deed upon its delivery as to preclude his grantee from conveying and transferring an equally good title to any other person or corporation? We must answer this question unqualifiedly in the negative. If the grantor, Beery, desired to limit the right of his grantee to transfer this property to any particular person or corporation, it was necessary to express that limitation upon the face of the instrument. For the foregoing reasons we are clearly satisfied that the court erred in receiving and considering the evidence offered for the purpose of showing a failure to vest title in the grantee.

There is another significant fact in this case, and one which alone would prevent the plaintiff from quieting his title under a quitclaim deed to the undivided one-half interest held by him, and that reason is found in the agreement of April 25th. It is there recited that the parties desire to enter into a "new and

different agreement," and the agreement provides "that, whereas, I. R. Beery, party of the first part, is the equitable owner of the real property hereinafter described, while Willard White, party of the second part, holds the legal title thereto by virtue of a deed heretofore executed. . . . . Now, therefore, . . . . it is agreed that said Willard White, has this day become the owner, absolute, of the equitable as well as the legal title to a one-half interest, undivided, in the property hereinafter described." It readily appears from the provisions of this agreement that whatever may have been the understandings and agreements · between Beery and White, at the time of the delivery of the deed, thereafter they adjusted those matters, entered into a new agreement, and Beery ratified and confirmed the delivery of the deed at least to the extent of an undivided one-half interest; and, consequently, at the time of the execution of the quitclaim deed to Whitney, Beery had no right, title or interest in and to such undivided interest in this property. Even though a valid delivery of the deed had not been made at the time of its execution, it is settled law that the grantor may thereafter ratify the wrongful taking of a deed after he has complete knowledge of the facts of the taking and thereby perfect the title. (9 Am. & Eng. Ency. of Law, 155, and authorities cited; 13 Cyc. 565, and notes.)

It has been suggested that since the appellant takes his title by quitclaim deed, he is for that reason chargeable with notice that the title of his grantor is doubtful, and that he is therefore not a *bona fide* purchaser. This appears to be conceded by counsel, but the same principle applies with equal force to the respondent who takes title likewise by quitclaim deed. Under this line of authorities both parties would be equally chargeable with notice of defects in their grantor's title. (9 Am. & Eng. Ency. of Law, 2d ed., 106, and notes; *Leland v. Isenbeck*, 1 Idaho, 469; *Butte Hdw. Co. v. Frank*, 25 Mont. 344, 65 Pac. 4; *Anderson v. Thunder Bay Boom Co.*, 57 Mich. 216, 23 N. W. 776; *Wetzstein v. Largey*, 27 Mont. 212, 70 Pac. 717; *Dickerson v. Calgore*, 100 U. S. 578, 25 L. ed. 618.) It is doubtful, however, if such a rule could or ought to prevail under the recording laws of this state.

Respondent contends that even though it be conceded that title passed from Beery to White, nevertheless, under the partnership agreement of September 7th, between White and Whitney, White was unable to part with any title to anyone other than Whitney himself. This contention is based upon that clause in the contract of September 7th, reading as follows: "It is further agreed that in the event that said White so fails to raise sufficient funds to construct such dam, or fails to make such progress as shall be satisfactory to said Whitney within one year from the date hereof, the said White agrees to assign all his right, title and interest in the same to said Whitney." It is conceded that White did not raise the necessary funds within the time prescribed, but it is equally true that the two, White and Whitney, continued in the possession of the property and to some extent operated upon the property for considerable time after the expiration of the year. White never assigned his interest to Whitney, nor does it appear that Whitney ever demanded that he do so except to demand that White convey to him an interest acquired under the deed of January 25th. The appellant in this case only claims an undivided one-half interest in the property. He is the successor in interest of White. The respondent acquired a quitclaim deed from Beery to the entire property. He must therefore, so far at least as is disclosed by this record, own the other undivided one-half interest in the property. They are therefore on equal footing. A rule which in equity would preclude White from acquiring an interest in the property to the exclusion of his partner, Whitney, would apply with equal force to Whitney. This is not an action by the plaintiff to compel White or his grantor with notice, to assign any interest acquired under the partnership agreement, and as to whether or not an agreement such as the one above quoted stipulating for assignment could be made the basis upon which a court of equity would declare a forfeiture, is a matter on which we are not required in this case to express any opinion.

The judgment of the lower court will be reversed and the cause remanded for further proceedings in harmony with the

views herein expressed. So ordered. Costs awarded to appellant.

Stockslager, C. J., and Sullivan, J., concur.

ON PETITION FOR REHEARING.

(May 31, 1905.)

AILSHIE, J.—Respondent's petition for a rehearing in this case does not present anything new or any question not originally considered by us, though it again discusses some questions which we did not deem it necessary to pass upon in the original opinion. The persistence with which counsel insists that we have mistaken both the law and the equities in this case has led us to again examine the case at length, and, after so doing, we are unable to see wherein the judgment of the trial court could be affirmed. It must necessarily be true that the court cannot see either the law or the equities of a case in the same light in which they are viewed by counsel for the losing party; and it may be, indeed, that sometimes the court mistakes them entirely. However, notwithstanding counsel's studied argument to the contrary, we are convinced that this is not a case where we have mistaken either.

We are asked in the petition to announce more definitely the position of the court as to what title White took under the deed of January 25th. The only interest the appellant claims, and for which he is litigating, is an undivided one-half interest in this property, and we have held that under the record he is entitled to such interest. Under the deed of January 25th, the entire legal title passed from Beery to White. Under the contract of April 25th, Beery recognized that the entire legal title had passed from him and that all the interest he retained in the property was an equity. What that equity was is not recited, but we would infer from the record that it consisted in a vendor's lien for the unpaid purchase price. By that contract Beery parted absolutely with all of his equity in an undivided one-half interest in this property. It therefore follows that after the execution of the contract of April 25, 1900, that both the legal title to the entire property and equitable title to an

undivided one-half interest therein was vested in White, and that by the terms of that agreement White recognized a remaining equity in Beery to the other undivided half interest in this property, and for that equity agreed to pay the sum of $1,750 on or before January 1, 1901. White does not appear to have paid this sum or to have received any further deed from Beery to his equity in this remaining half interest. On the contrary, Whitney appears to have received a deed from Beery for the entire tract of land on May 13, 1901. So far as the facts, therefore, disclosed by this record are concerned, we conclude that the appellant Dewey now owns an undivided one-half interest in the property as described in the deed taken by him and Whitney the other one-half interest.

It is suggested that White acquired all the interest he obtained in this property while sustaining a fiduciary relation toward Whitney, his partner, under the agreement of September 7, 1899. This we think is correct, and it is equally true with reference to Whitney. But counsel contends that this relation had been terminated prior to the date on which Whitney acquired his deed. To this we cannot assent. The contract of September 7th was made for a period of one year, and yet respondent repeatedly admits in his testimony that they continued to do business in all respects as though it were still in force and effect from the date upon which it was executed until the 1st of April, 1901, and that all that then occurred looking to the termination of the partnership relation consisted merely in respondent notifying White that he was going to declare the matter off. It takes more than a notice of this kind to dissolve a partnership and terminate a trust or fiduciary relation existing between partners. If White acquired the entire title, one-half thereof would undoubtedly have inured to the benefit of his partner, Whitney. If, on the other hand, he acquired only a one-half interest in the property and in the meanwhile and during the existence of that relation, and in pursuance thereof, his partner acquired the other half interest, then such interests and equities must offset each other and the obligations resting upon them by reason of such relation will be met in that respect.

Again, it is insisted by counsel that White and his grantee are estopped to now assert title to this property on account of the declarations and statements made by White to Whitney and others after receiving the deed from Beery. These statements were of the same character as the testimony of Beery concerning the conditions imposed on White upon the delivery of the deed. It is not contended by appellant that the statements which are claimed to have been made by White after receiving this deed were not true. It would appear from this record that if he made these statements, he was, as a matter of fact, only stating what had actually occurred. But the trouble is that the law will not permit parol testimony of such matters to defeat the vesting of title. If, therefore, the statements he made were true concerning such matters, they were not of such a character as to prejudice the respondent or in any way to deceive him as to the facts or mislead him in his action or conduct. The respondent is presumed to have known, as a matter of law, that such conditions could not·be attached to a deed upon its delivery to the grantee, and having had full notice of the execution of the deed and of the agreements and contracts in relation thereto, he was, as a matter of law, neither deceived nor prejudiced by the statements or declarations so made. So long as he obtains his share as a partner in the fruits of the enterprise, he has no cause for complaint.

It should be further observed that it nowhere appears that any of these statements or declarations made by White were subsequent to the contract of April 25th. It would appear, however, from the record that they must have been made prior to that time. It seems to us from a reading of the record before us that respondent must have understood that he and his associate White were acquiring title by virtue of the deed of January 25th and contract of April 25th, or else he would not have continued to occupy and improve the property for a period of more than a year thereafter. They do not appear to have had any other contract or agreement whereby they could acquire the title to that property, as they had failed to make their payments under the contract of December 26th, and that contract had been superseded by the contract of April 25th. It

does not seem reasonable that respondent would have spent a year's time and labor on this property unless he felt that he had title or legal and binding obligations whereby he or he and his associate could acquire title thereto.

' Other questions were argued by respondent in his brief and have also been presented in his petition for rehearing, but we do not think they properly arise upon this appeal, nor is the record in such a condition as to justify us in discussing them. Besides, a legal determination of some of the points urged would necessitate other parties to the action in order to give them any binding effect. We find no reason for granting a rehearing in this case, and it will therefore be denied.

Stockslager, C. J., and Sullivan, J., concur.