## BUTTE HARDWARE CO., APPELLANT, *v.* FRANK ET AL., RESPONDENTS.

(No. 1,325.)

(Submitted April 18, 1901. Decided May 27, 1901.)

*Mines — Patents—Judgments—Liens—Unpatented Claims—-Abandonment—Pleading—Quitclaim Deed—Appeal.*

1. An unpatented mining claim being real estate, a judgment lien attaches. to it, under Code of Civil Procedure, Sec. 1197, declaring that from the time a judgment is docketed it becomes a lien on all real property of the judgment debtor.

2. A judgment lien on an unpatented mining claim is not lost by the transfer in writing of the claim by the judgment debtor, on the ground that such transfer is an abandonment thereof, since the transfer in writing of an unpatented claim does not amount to an abandonment.

3. Rev. St. U. S. Sec. 2332, declares that nothing in the chapter of the Revised Statutes relative to the locating, holding or procuring of titles to mining claims and to adverse claims, etc., shall be deemed to impair any. lien which may have attached in any way to any mining claim prior to the issuance of the patent. *Held,* that a judgment creditor having a lien on an unpatented mining claim was not obliged to adverse the claim of the locator under the United States statutes providing for the filing of adverse claims against one seeking a patent for a mining claim on the public domain. But after execution levied and officer's deed made and delivered, the purchaser should adverse, because the lien is gone as a lien.

4. A quitclaim deed implies a doubtful title in the grantor, and it should not be held to pass anything more than a doubtful title.

5. A complaint alleged that plaintiff had a docketed judgment against R., and that certain unpatented mining claims were conveyed by deed absolute from D. to R., who on the same day gave a quitclaim deed to F., and that the property was sold to plaintiff at judgment sale. F. was in the possession of the property at the time the quitclaim deed was made. *Held,* that there being neither an allegation that R. ever owned any of the property, nor that F. ever got any property or title from him, and there being an implication of doubt as to the title from R., owing to his having given a quitclaim deed to one in possession, the complaint was insufficient to sustain a suit on the theory that the judgment sale of the land to plaintiff transferred to him title to the claims.

6. If the act of the trial court in sustaining a demurrer was right, such act must, on appeal, be sustained, notwithstanding the trial court may have, in sustaining the demurrer, done so for a wrong reason.

7. A judgment may be affirmed for a substantial defect in the complaint, although counsel in their briefs and arguments are silent as to such defect (Mr. Justice Pigott *dissenting*).

*Appeal from District Court, Silver Bow County; John Lindsay, Judge.*

SUIT by the Butte Hardware Company against Henry L. Frank and others. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

*Mr. F. T. McBride* and *Mr. Bernard Noon,* for Appellant.

*Messrs. Campbell & Parr,* for Respondents.

MR. JUSTICE MILBURN delivered the opinion of the Court.

This case comes before this court upon the appeal of the plaintiff from a judgment entered after the sustaining of a demurrer to a complaint, the ground of said demurrer being that the pleading did not state facts sufficient to constitute a cause of action. The plaintiff elected to abide his complaint, and a judgment was entered for the defendants.

Appellant declares that the questions raised by respondents in the lower court are: First, "Does the lien of a judgment attach to an unpatented mining claim under the statutes of Montana, which provide that a judgment becomes a lien upon all the real property of the defendant from the time of the docketing thereof?" and, second, "If it does, is such a lien an adverse claim, within the meaning of the United States statutes providing for the filing of adverse claims in the land office against one seeking a patent for a mining claim on the public domain?" Counsel for the respondents in their brief declare that they do not consider either of the foregoing questions of importance in the case, and therefore refrain from discussing them. They hold that the question to be considered by this court is, "Does a judgment rendered against a locator or a holder of a possessory title to an unpatented mining claim attach to the government's title, where the locator has only the right to purchase from the government of the United States upon certain conditions, where he has failed to exercise that right, and has abandoned the same by conveying his possessory right to another?"

The complaint sets up: that the plaintiff is a corporation organized under the laws of the state of Montana; that a judgment was duly procured and entered in the district court of Silver Bow county in favor of the plaintiff on September 6, 1890, in the sum of $922.02 with costs, against the firm of Gordon & Ritchie, composed of John A. Gordon and Frederick Ritchie, said judgment having been duly docketed on September 17, 1890; that on May 18, 1895, a writ of execution was issued and by the sheriff levied on certain lands described in the complaint, said lands being levied upon as the lands of the said Ritchie; that on the 10th day of June, 1895, the sheriff sold all right, title and interest of the said defendant in said lands; that the plaintiff was the highest bidder, and became the purchaser thereof; that a certificate of sale was executed and delivered by the sheriff to the plaintiff, and was duly recorded in the office of the clerk of Silver Bow county; that there was no redemption, and the sheriff executed and delivered to the plaintiff (it being still the owner of the said certificate) on July 30, 1896, a deed of conveyance of the premises in question; that said property consisted of an undivided one-half interest in the John the Baptist lode, an undivided one-half interest in the Silver Moon lode, all of the Evangelist lode, all of the Mascot lode, all of the Copper Trust lode, and an undivided one-sixth interest in the Eddie lode, situate in said county; that after the docketing of the judgment one Paul A. Davis "conveyed by deed absolute to the defendant Frederick Ritchie the herein-described premises on May 21, 1891, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining;" that "thereafter, to-wit, on the 21st day of May, 1891, the said defendant Frederick Ritchie conveyed by quitclaim deed all his right, title and interest to the above-described premises to the defendant herein, Henry L. Frank;" that at the time of the purchase of said premises by the said Ritchie, and the transfer by him to Frank, the same were unpatented mining claims; "that thereafter, and while the lien of this plain-

tiff's judgment hereinbefore alleged was still a valid and subsisting lien upon said premises, the defendant herein, Henry L. Frank, secured patents from the United States government for said unpatented mining claims as follows, to-wit: Evangelist, August 19, 1893; Mascot, August 19, 1893; John the Baptist, August 19, 1893; Silver Moon, December 21, 1893; Eddie, February 21, 1895; Copper Trust, August 19, 1893."

The complaint further states that on October 23, 1896, the defendant Frank conveyed by quitclaim deed a certain interest in the Copper Trust claim (describing it) to the defendant John S. Clapp; that on the same day said Frank conveyed to F. H. Symons, by quitclaim deed, all his interest in and to a certain portion of the surface ground of the Copper Trust claim (describing it); that "the defendants herein, Henry L. Frank, John S. Clapp and F. H. Symons, are, and have been at all times hereinbefore mentioned, in connection with the said defendants, in possession of and control of the heretofore described premises; that they claim the same adversely, and withhold the same wrongfully and unlawfully and illegally from this plaintiff; that the said claims of the said defendants are adverse to the rights of this plaintiff, and operate as a cloud upon the title of plaintiff, which, unless removed and possession given to plaintiff, will in time ripen into title by adverse possession;" that plaintiff at all times "since the execution of the said sheriff's deed to plaintiff on the 30th day of July, 1896, has been the sole and unconditional owner in fee simple of the said premises herein described, and entitled to the use, benefit and enjoyment of the same, and that it has never parted with the same, or any portion thereof;" that the defendants claim title to said premises by reason of said patents secured by the defendant Henry L. Frank, and the conveyances of Frank to the defendants Clapp and Symons; that defendants further claim that plaintiff is forever barred and estopped from claiming or asserting any right, title or interest in or to the said premises, by reason of its failure to file any adverse claim to the application of said Henry L. Frank for a patent to the prem-

ises at the time he secured the said patents; that plaintiff claims title to the said premises by reason of the sale and the execution of the sheriff's deed as aforesaid; that on May 21, 1891, said judgment became and was a lien upon said property; that the lien of its judgment was preserved by Section 2332 Rev. St. U. S.; and that plaintiff was not required to assert an adverse claim against the alleged application of Frank for a patent.    Plaintiff prays that the lien of said judgment may be adjudged and decreed as a valid and subsisting lien upon the property in controversy at the time of said sale, that the sheriff's deed be declared to have passed the title in fee to said premises, that plaintiff be declared the sole owner as against the said defendants, and that the claims of the defendants be declared to be void as to the plaintiff.    Plaintiff further prays that it be awarded the possession of the premises free from all claims and demands of the defendants, or those claiming under them, and for further relief.    The demurrer was submitted without argument.

The question of whether a judgment lien attaches to an unpatented mining claim is new to this jurisdiction, and is not devoid of difficulty.    Section 1197 of the Code of Civil Procedure provides that, "immediately after filing the judgment roll, the clerk must make the proper entries of the judgment under appropriate heads, in the docket kept by him; and from the time the judgment is docketed it becomes a lien upon all real property of the judgment debtor not exempt from execution in the county, owned by him at the time, or which he may afterward acquire, until the lien ceases.    The lien continues for six years, unless the judgment be previously satisfied."    Is an unpatented mining claim real property of the owner?    This question must be answered in the affirmative.    There is no need to argue this point, as it seems to be settled by authority that unpatented mining claims are real estate.    (*Robertson* v. *Smith,* 1 Mont. 410; *Hopkins* v. *Noyes,* 4 Mont. 550, 2 Pac. 280; *Tibbitts* v. *Ah Tong,* 4 Mont. 536, 2 Pac. 759.)    They are property in the fullest sense of the word.    They may be sold,

transferred, mortgaged and inherited without infringing the title of the government. They may be sold to enforce a lien for taxes. (*Forbes* v. *Gracey,* 94 U. S. 762, 24 L. Ed. 313; *State ex rel. Baker* v. *Second Judicial Dist Ct.,* 24 Mont. 330, 61 Pac. 882.) We cannot do else, in the light of authority, than hold that unpatented mining claims are real estate, and that therefore a judgment duly docketed as provided in Section 1197, *supra,* is a lien upon them, with all other real estate belonging to the judgment debtor.

The point is raised by respondents that a judgment, if a lien, would not be such after sale of the mining claim,—he giving up possession to the vendee,—for the reason that such sale would be an abandonment, and all his rights would be gone, and the lien with them. In support of this position counsel cite *Murley* v. *Ennis,* 2 Colo. 300, which declares that title by location may be lost by abandonment, and that if, *without writing,* he yield up the possession to another, "the right of the first occupant is gone by abandonment, and by virtue of his occupancy a new right has arisen in him who succeeds." It is to be noted that the transfer is said to be abandonment if made *without writing.* The alleged transfer from Ritchie to Frank was in writing; hence the authority does not fit the averment of the complaint. Respondents also cite *Derry* v. *Ross,* 5 Colo. 295, but we find nothing in that case to support the contention that a conveyance to another works an abandonment; for the court holds that mining claims are "rights which may be devested by sale, gift or abandonment." This language is very far from a statement that a sale is an abandonment, but is very strong in its implication that it is not.

Section 2332, Rev. St. U. S., clearly contemplates the buying and selling of mining claims, as it provides that, upon application for patent, evidence may be offered to show the possession of and work done by the applicant's grantors. It would be absurd to permit sales for the benefit of the vendees, and then declare such sales proof of abandonment of all rights of the grantor.

Should a judgment creditor adverse the application of the judgment debtor or his grantee for a patent? We think that there is neither law nor logic suggesting such a thing. In *Hamilton* v. *Southern Nev. Gold & Silver Mining Co.* (C. C.) 33 Fed. 562, 13 Sawy. 113, 117, it was held that the interest obtained by a purchaser at a constable's sale prior to the time of expiration of the publication of notice is an adverse claim, which, unless filed as the law requires, is waived; but the very reason given for this is the reason why a lienor, merely, cannot adverse. The purchaser at the execution sale has stepped into the shoes of the judgment debtor, the owner of the claim; and if the sale be valid he can go on to perform the work and other things necessary to be done, pay the purchase money, contest the rights of other claimants and procure the title from the government, which does not pass by virtue of the officer's deed. Such deed from such officer, selling on execution, passes only the present interest, and not an after-acquired title, and can only have the effect of a quitclaim deed in its strictest sense. Hence, if he have such deed, he must adverse. If he have merely a judgment lien on all the realty of the debtor, he cannot adverse, because he is not yet in the place of the debtor, and, further, because the lien continuing will be a lien on the realty of the debtor after as well as before patent,—no more, no less. In case of a special lien, such as a mortgage, the lienor need not adverse the debtor's claim to a patent, as the patent will inure to his benefit. (Lindley on Mines, 719.) The same reason will, we think, apply to a judgment lien; and, further, such lien, doubtless, is included within the provisions of Section 2332, Rev. St. U. S., which declares that nothing in the chapter of the Revised Statutes which relates to the location, holding and procuring title to mining claims and to adverse claims, etc., shall be deemed to impair any lien which may have attached in any way whatever to any mining claim or property thereto attached prior to the issuance of the patent. After execution levied and officer's deed made and delivered, the purchaser should adverse, because the lien is gone as a lien. Before such deed made and delivered, no adverse claim may be made.

We come now to the consideration of the point made by respondents' counsel: "Does a judgment rendered against a locator or a holder of a possessory title to an unpatented mining claim attach to the government's title, where the locator only has the right to purchase from the government of the United States upon certain conditions, where he has failed to exercise that right, and has abandoned the same by conveying his possessory right to another?" This question is *petitio principii*. It begs the question, for that it assumes that conveying one's possessory rights is abandonment, which, as we have heretofore shown, is not the case.

The question in this cause is this: Did Ritchie own and convey valid mining claims to Frank by his quitclaim deed, and did Frank prove up on those claims so conveyed to him, and get patents therefor; his right to patents depending, in whole or in part, upon any rights of Ritchie actually conveyed to him by said quitclaim deed? If he did, he bought and took the claims with all the disabilities of the grantor attaching thereto; that is, he bought real estate from the owner, against whom there was a valid, docketed and existing judgment in the district court, and the patent would inure to the benefit of the judgment creditor, and the sheriff's deed, after execution sale, would convey title to the purchaser.

But does the complaint state facts showing such a case as last referred to? The counsel for plaintiff proceeds upon the theory that Ritchie was the owner of said claims; that Frank took title from Ritchie; that Frank had patented certain mining claims located by Ritchie or some predecessor of his, his right to patents depending upon the acts of Ritchie and his predecessor; and that plaintiff is the owner by and through the sheriff's deed.

The amended complaint does not thus state. It does not reasonably imply that these alleged facts are true. The statement that Davis conveyed by "deed absolute" to Ritchie, and that Ritchie conveyed all his interest by quitclaim deed to Frank, is not a statement that Davis or Ritchie owned the property or

any interest therein, or even located or represented it or any part thereof. The deed of Davis might estop him from denying that he had sold the property to Ritchie, but he is not a party to this action. Certainly an admission by Frank, if such should be made, that Davis made a deed of conveyance—a "deed absolute"—to Ritchie, and that Ritchie made a quitclaim deed to him (Frank) would not be an admission that Davis was the owner when he conveyed to Ritchie, or that Ritchie owned said property when he (Ritchie) made the quitclaim deed. A quitclaim deed implies a doubtful title in the grantor, and, such being its character, it should not be held to pass anything more than a doubtful title. (9 Am. & Eng. Enc. Law, 2d Edition, 106, note; *Kerr* v. *Freeman,* 33 Miss. 292; *Emmel* v. *Headlee* (Mo.) 7 S. W. 22.) In *Anderson* v. *Thunder Bay River Boom Co.,* 57 Mich. 216, 23 N. W. 776, it was held that a quitclaim deed from a party not shown to have been in possession at the time it was executed is no evidence of a title,—much less when the party claiming under the deed was already in possession of the land at the time that the deed was given. There is nothing in the amended complaint in the case before us to show that Ritchie—or Davis, even—was ever in possession; but there is a statement in the amended complaint that Frank was in possession and control of said claims at the dates connected with him in said amended complaint, and the date of the quitclaim deed (May 21, 1891) certainly relates to him as well as to the grantor, so that he must have been in possession and control of the property when the quitclaim deed was made, so that, as said in *Anderson* v. *Thunder Bay River Boom Co., supra,* the quitclaim deed was no evidence of title conveyed to Frank.

It cannot be held that in Montana an after-acquired title relates back to a quitclaim, and passes to the grantor in it, if the grantor had no equitable title at the date of the quitclaim deed. How, then, can it be reasonably inferred that, if Frank got a patent, it inured to the benefit of Ritchie's judgment creditor, when it would not even presumptively appear that, if it were in the amended complaint alleged that a patent for

the land had been issued to Ritchie, it would convey the title to Frank? There is no allegation or presumption that Ritchie had the legal or equitable title at the date of the quitclaim deed.

To conclude as to this point, there is neither an allegation that Ritchie ever owned any property on which the judgment was a lien, nor an allegation that Frank ever got any property or title from, by or through him; but, on the contrary, there is implication of doubt as to his title from Ritchie. To allege that Frank took a quitclaim deed while he was in possession and control of the property does not reasonably rebut the idea that he owned the claim as a locator or as assignee of some locator (not Ritchie), and that he procured a patent upon such ownership. It is not unreasonable to conclude from the amended complaint that Frank, in order to prevent the annoyance of a contest in the United States land office, procured such quitclaim deed. The allegation of plaintiff's ownership ever since the sale by the sheriff is no more than a statement that it owns whatever property was actually acquired by and through such sale, whereas, as we have seen, there is no averment that Ritchie had ever any to sell either to Frank or through the sheriff. It must clearly appear from the complaint that the plaintiff has a right to the thing demanded, or such an interest in the subject-matter of the action as will authorize him to bring a suit concerning it. Failing in this, a general demurrer to the bill for want of equity will lie. (6 Enc. Pl. & Prac. 400, and cases cited.)

Where a seasonable attack is made upon the complaint for want of substantive allegations, the court should indulge, as against the pleader, the presumption that he has stated his case as strongly as he can. (*Conrad Nat. Bank* v. *Great Northern Ry. Co.,* 24 Mont. 178, 61 Pac. 1.)

The amended complaint does not state facts sufficient to warrant the court in affording relief. The demurrer having been submitted without argument, we cannot tell upon what ground the court sustained it; and it does not seem that counsel are agreed upon the points upon which the controversy turned, or upon which it is before us on appeal.

Counsel seem to assume in their briefs that certain averments therein are contained in the complaint; that is, allegations setting up that Frank got the property from Ritchie,—proved up and got his patents by and through Ritchie's quitclaim deed, and title conveyed thereby. But there are no such averments. This case is before this court on appeal from the judgment, which judgment was on demurrer sustained to the amended complaint for want of substance; plaintiff abiding its complaint. The court was right in its decision on the demurrer. The judgment is right, and must be sustained. The court may have, in sustaining the demurrer, done so for a wrong reason, but we have nothing to do with its reasons. Our duty is to pass upon the correctness of its action. If the act of the court in sustaining the demurrer was right, the court must be sustained. (Hayne on New Trial & App. p. 839.)

The silence of counsel as to the defects found by this court in the said complaint cannot in such a case as this be regarded as a restriction upon the legal scope of the general objection raised by the demurrer.

The judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Brantly:  I concur.

Mr. Justice Pigott (dissenting):  I concur with the majority of the court in holding that an unpatented mining claim is real property subject to the lien of a docketed judgment, that the holder of such a lien is not an adverse claimant within the meaning of congressional legislation, and that the conveyance of an unpatented mining claim is not an abandonment. The complaint is, I think, defective in the particulars adverted to in the opinion, and, if they had been pointed out or even suggested in this court I should not hesitate to concur in the judgment of affirmance. But neither party has suggested that the complaint is wanting in substance because the allegations which this court deems necessary have been omitted therefrom. In their briefs and arguments counsel do not intimate that the

complaint is insufficient for want of the averments mentioned, —on the contrary, all the arguments are devoted to the question whether the complaint in other respects fails to state facts sufficient to constitute a cause of action. So far as the present appeal is concerned, this court should, I think, examine the complaint for the purpose of determining whether it is obnoxious to the specific objections urged, and should not affirm the judgment below upon a point not made, but practically waived, in this court. It would be eminently just and proper in reversing the judgment to call attention to the seeming defect, so that upon remand appropriate steps might be taken, the complaint being susceptible of amendment according to the facts. But the complaint is now held to be insufficient, and the judgment is affirmed, because of a defect not relied upon by the respondents. It is true that in *Wilson* v. *Harris,* 21 Montana, 374 (54 Pac. 46), a complaint was declared to be insufficient upon a ground not specifically relied on by the defendants; but that was a very different case from the one at bar, and there the judgment was reversed and a new trial ordered on appeal by the defendants, thereby affording an opportunity for amendment.

I am therefore constrained to dissent from the judgment of affirmance.