JOHNSON, STATE BANK EXAMINERS, RESPONDENT, *v.* KAISER ET AL., APPELLANTS.

(No. 7,606.)

(Submitted March 3, 1937.  Decided March 13, 1937.)

[65 Pac. (2d) 1179.]

*Mr. D. R. Young,* for Appellants, submitted a brief and argued the cause orally.

264

*Mr. Al Hansen, Mr. S. C. Ford* and *Mr. Sam D. Goza, Jr.,* for Respondent, submitted a brief; *Mr. Ford* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This action was brought to set aside certain conveyances of real estate. The cause was tried before the court sitting without a jury. Findings and conclusions of law were made in favor of the plaintiff, and judgment was rendered in conformity therewith. The appeal is from the judgment.

On June 3, 1930, the First State Bank of Plevna was the owner of the lands in question. On that date, acting through its president, Victor S. Himsl, and secretary, it executed a quitclaim deed conveying the lands to W. V. Kaiser for a recited consideration of $1. On the date following Kaiser and his wife conveyed them by quitclaim deed to Himsl and his wife for a recited consideration of $1. On June 26, 1931, the above-named bank closed its doors and the board of directors delivered the assets and property of the bank into the hands of the Superintendent of Banks. This action was brought by the

plaintiff Superintendent of Banks as liquidating officer of the bank, to cancel and set aside these deeds.

The bank had acquired the lands through a foreclosure proceeding and secured a sheriff's deed to them a few days before the conveyances in question. Many years prior to the foreclosure, Cunningham, the then owner of the lands, had mortgaged them to the bank to secure a note for $4,500. After some years, the banking department had required that a part of this note be charged off in the sum of $2,000, and this was done. At about that time an assessment was made upon the stockholders of the bank to make good the impairment of capital arising out of the charging off of this item and some others. During all of the various transactions in connection with the bank, Himsl was the principal stockholder, he owning more than a majority of the capital stock of the bank. Prior to the execution of the conveyance Himsl was authorized by a resolution of the board of directors to sell this land for $2,870, being the amount for which the land was carried on the books of the bank as an asset. Judgment was secured in the foreclosure proceeding and the property was bid in at the decretal sale for a sum in excess of $8,000. The land at the time of conveyance was located in a district in which various producing gas wells had been drilled on land in that vicinity. It is conceded that Kaiser paid no consideration for the transfer to Himsl, and none was paid by Himsl to Kaiser for the second transfer. The bank received $2,800 as a result of a transaction between Himsl and the Gas Development Company. Himsl and wife, soon after the date of these deeds, executed an oil and gas lease upon the lands in question to the gas company and received an advance payment of royalties in the form of a check for the sum of $2,800, which was indorsed by Himsl and delivered to the bank. Under the terms of this oil and gas lease, the lessee agreed to drill a well which it did, and this well had produced in gross royalties at the time of trial in excess of $5,500. Himsl and wife agreed in the event no production was encountered to repay this advance payment in the sum of $2,800, together with interest. The

residue of the sum of $2,870 above mentioned—namely $70— was paid to the bank in this manner. Himsl gave to the bank his personal check, which was charged against the Westmore Elevator Company account on the books of the bank. The bank had acquired this Westmore Elevator Company property some years before and carried it as a book asset of the bank for some time; afterwards, at the insistence of the banking department it was charged off, and Himsl, the president and principal stockholder of the bank, operated the elevator property. The bank advanced money for its operation and received the profits, if any, although the business was conducted in the name of Himsl or various other names, but in any event it was operated by Himsl.

The trial court found that on June 3, 1930, Himsl, with the purpose and intent of depriving the bank and its depositors, creditors, and stockholders of these lands, and with the intent to appropriate them to the use and benefit of himself and wife, caused the Kaiser deed to be executed and delivered by the bank; that no consideration was paid by Kaiser, or anyone in his behalf, for this deed which was executed with the understanding and agreement that Kaiser would convey to Himsl and wife; that no consideration was paid by Himsl and wife to Kaiser for the execution of the deed to them, which deed was executed and delivered in consummation of the purpose and intent of the defendant Himsl to deprive the bank, its creditors and stockholders of the property; that the consideration passing to the bank in the sum of $2,870 was the money and property of the bank; that for more than a year prior to June 3, 1930, the Gas Development Company and other persons had been negotiating for and endeavoring to obtain an oil and gas lease from the bank upon these lands; and that Himsl had conducted the negotiations and knew of the facts while acting in his fiduciary capacity. As conclusions of law the court found that Himsl had gained an undue advantage in the transaction by virtue of his fiduciary relationship, and that by reason thereof the deeds were void and should be canceled.

Error is assigned upon the ruling of the trial court restricting the admission of testimony and upon the findings and conclusions of law of the court.

While the witness Kleve was on the stand, who had represented the banking department in various capacities over the period of time involved and who had made examinations of the bank, inquiry was made of him if a private individual had offered to pay $2,870 for the land and the offer had been submitted to the banking department, whether it would have advised the bank to accept the offer. The court declined to permit the witness to answer the question, objection having been made. We think the testimony sought to be elicited was immaterial, as the statutes do not authorize the banking department to control to that extent the management of a bank by its directors, nor, whatever the department's advice might have been, would it in anywise be controlling here.

The witness Graff, who had been connected with the banking department, was called as a witness for the plaintiff. Inquiry was made of him whether the banking department would have approved the execution of a lease by the bank for oil and gas containing a provision that the bank would have to repay advanced royalties in the event no production was encountered. Objection was sustained to this question. This was likewise immaterial. What we have said with reference to the previous specification is likewise controlling here.

The other specifications of error raise the question of the sufficiency of the evidence to support the findings, the conclusions of law and the judgment.

The fact that a part of the Cunningham note had been charged off the books of the bank and a stockholder's assessment had been paid by Himsl and others to make good the resulting impairment of capital did not operate to transfer to Himsl any interest in that note or the land mortgaged to the bank as security for the note. Nor did the fact that the Westmore Elevator Company property had likewise been charged off the bank's books and turned over to Himsl to operate, transfer, or convey any interest in this property to Himsl. Items which

are charged off of the ledger of a bank do not thereby cease to be assets of the bank, and may not be transferred or conveyed by the bank except for a valuable consideration. The process of charging off amounts only to a reclassification of assets. (*Baker* v. *Citizens' State Bank of St. Peter*, 81 Mont. 543, 264 Pac. 675.) Also, one who pays a stockholder's assessment to a bank, being legally bound to do so—and there is no contention here that the assessment was in anywise illegal— does not thereby pay to the bank a consideration which will support the transfer of any assets of the bank. (Id.)

Section 6014.47, Revised Codes, provides: ''No directors, officer, agent or other employee of any bank, shall, directly or indirectly, for his own personal benefit, purchase or sell or be interested in the purchase or sale of any obligation of said bank, or of any of the assets of said bank, for a sum less than shall appear upon the face of the obligation or obligations so purchased or sold.'' Plaintiff argues that this statute condemns the transaction; the defendant contends the contrary.

In the case of *McManus* v. *Fulton*, 85 Mont. 170, 278 Pac. 126, 130, 67 A. L. R. 690, this court said: ''A contract expressly prohibited by a valid statute is void. The proposition has no exception, for the law cannot at the same time prohibit a contract and enforce it. The prohibition of the legislature cannot be disregarded by the courts.'' Counsel for the defendants argues that because the section uses the expression ''the face of the obligation or obligations,'' the amount for which the land was carried upon the books of the bank in the sum of $2,870 was the amount, within the meaning of the section, necessary to be paid by a director or officer as the purchase price of this property; whereas it is contended on behalf of the plaintiff that the amount of indebtedness which was owing by Cunningham, and for which the land was purchased, in excess of $8,000, was the necessary amount under the statute in the circumstances.

The sum appearing upon the face of the obligation would be the sum which could be ascertained from an examination of the instrument itself without regard to extrinsic facts

or evidence. (*Investors' Syndicate* v. *Willcuts*, (D. C.) 45 Fed. (2d) 900.) The statute under consideration prohibits the sale, not only of the obligation of the bank, but also of any of its assets. Clearly, under the section, if a note, the property of the bank, was sold to some person within the provisions of the statute, the amount determined from an examination of the note as owing would be the sum appearing on the face of the obligation. The plain intention of the statute is to prohibit a director or officer of the bank from purchasing property of the bank for less than the bank has invested in it. Although the language is somewhat awkward in expressing this intent, nevertheless interpretations must be reasonable (sec. 8771, Rev. Codes), and where the reason is the same, the rule should be the same (sec. 8740, Id.). Whether we are considering the disposition of a note by the bank or some tangible asset such as land, no reason can be suggested why a bank should not be permitted to sell a note to a director or officer for less than the amount due on the note, but might be permitted to sell to the same person occupying a like fiduciary relation a tract of land, an asset of the bank, for less than the amount of the bank's investment. Accordingly, we hold that the above statute prohibits this transaction.

It is contended that the $70 paid by the personal check of Himsl was a payment of a part of the consideration by him. As we have already demonstrated, the $70 check was charged to the account of the Westmore Elevator Company which was in fact the bank. Accordingly, nothing was received by the bank so far as that transaction was concerned. The $70 was already its property.

Next it is argued that if the transaction, supra, was not sufficient as a part of the consideration, Himsl paid certain taxes on the lands which were a lien at the time he accepted the conveyance. If the conveyance had been by warranty deed, there might be some merit to this contention, but both of the conveyances here involved were by quitclaim deed, and hence the bank did not undertake to convey the land free of tax liens, and the grantees would take the title as they found it.

It appears from the record that Cunningham, who was the mortgagor of the lands, had endeavored to effect a redemption of them and had perfected an arrangement or understanding with the bank whereby he might be permitted to redeem upon the payment of the sum of $5,500, but was unable to effect the redemption. Within thirty days after the expiration of the period of redemption Himsl acquired the lands for which, he asserts, he paid but $2,870. The Gas Development Company had been communicating with Himsl for some time relative to securing a gas lease on these lands. Yet Himsl, so far as it appears from the record, did not disclose to the directors of the bank anything concerning these negotiations. The resolution of the board of directors authorizing him to sell did not disclose any intention on the part of Himsl to acquire title. He was authorized to sell the lands, but his name was not mentioned as a prospective purchaser. An officer or director of a corporation who has transactions with it sustains a fiduciary relation to the corporation and must act with utmost fairness and candor in such transactions. (*Alward* v. *Broadway Gold Min. Co.*, 94 Mont. 45, 20 Pac. (2d) 647, and cases there cited.) And when a director has been dealing with a corporation, the burden is at once upon him to show that his dealings have been fair and honest. (*Stephenson* v. *Rainbow Flying Service, Inc.*, 99 Mont. 241, 42 Pac. (2d) 735, and cases cited.)

Defendants did not sustain this burden, but they argue that by reason of certain presumptions the burden was still upon plaintiff to show that the contract was unfair and that the defendants had gained an advantage over the plaintiff and those whom he represented. They refer to the following disputable presumptions declared by section 10606, Revised Codes: Subdivision 1, that a person is innocent of wrong; 4, that a person takes ordinary care of his own concerns; 19, that private transactions have been fair and legal; 20, that the ordinary course of business has been followed; and 33, that the law has been obeyed. A disputable presumption may be controverted by other evidence. It is successfully controverted when proof to the contrary satisfactorily overcomes it. When the evidence

preponderates against the disputable presumption, it fades away in the face of contrary facts. (*In re Wray's Estate,* 93 Mont. 525, 19 Pac. (2d) 1051.) Although in some instances there may be conflicting presumptions (*McMahon* v. *Cooney,* 95 Mont. 138, 25 Pac. (2d) 131), more often these presumptions prescribe the duty of production of testimony on a party at a given time, and when it is removed by his producing evidence, then the presumption as a rule of law is satisfied and disappears, and he may then by his evidence succeed in creating another presumption which then puts the same duty upon the other party (5 Wigmore on Evidence, 2d ed., sec. 2493.) At the outset of this case, before any admissions of the answer were considered and any proof was received, the presumptions for which defendants contend would obtain, but when it appeared from the admissions in the answer and the production of proof satisfactorily that these disputable presumptions were overcome, the burden was then upon the defendants to explain away the presumption which confronted them. This they failed to do.

Lastly it is contended that the action is barred by laches. There was no pleading of laches, but assuming this defense may be raised without a plea, it does not appear that any change in the circumstances of any of the parties to these transactions had occurred which had materially altered the situation during the delay. In the absence of a showing of a material alteration in the condition and circumstances of the parties where the lapse of time is short of the statute of limitations, the defense will not be permitted. (*Riley* v. *Blacker,* 51 Mont. 364, 152 Pac. 758, and cases cited.)

The evidence was sufficient to support the findings and judgment of the court.

The judgment is affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MORRIS and ANGSTMAN concur.

MR. JUSTICE STEWART, deeming himself disqualified, takes no part in the foregoing decision.