AITKEN, Admr., Respondent, *v.* LANE et al., Defendants; SMITH, Appellant.

(No. 7,879.)

(Submitted March 16, 1939.   Decided May 26, 1939.)

[92 Pac. (2d) 628.]

*Mr. H. A. Bolinger* and *Mr. H. A. Bolinger, Jr.*, for Appellant, submitted an original and a reply brief; the former argued the cause orally.

*Mr. Walter Aitken,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an action to foreclose a real estate mortgage. It was begun by Susan Bauch, the holder of the mortgage. Thereafter Susan Bauch died and the administrator was substituted in her place as the plaintiff. November 4, 1919, the defendant Lane and wife made and delivered a promissory note for $5,000 to Drake-Ballard Company, a corporation, and at the same time made and delivered to that corporation a real estate mortgage on certain lands in Gallatin county as security. Thereafter Drake-Ballard Company endorsed and delivered the note and

assigned the mortgage to the Security Trust Company of Freeport, Illinois, which corporation in turn sold and delivered the note and assigned the mortgage to Susan Bauch. These respective assignments of the mortgage were duly recorded in Gallatin county.

On January 25, 1928, the note being past due and unpaid, an extension agreement in writing pursuant to the provisions of section 8264, Revised Codes, was entered into between Susan Bauch and Lane and wife, by which the parties agreed that payment of the note should be extended for a term of three years from December 1, 1927. This agreement was duly acknowledged and certified to, but was not recorded until November 2, 1935. September 20, 1930, a similar extension of the time of payment of the debt was made between the parties, Susan Bauch being represented by A. Bidwell in the agreement, who it is alleged in the complaint was her duly authorized agent. This extension was for an additional three years from the first of December, 1930, and at the same time Lane and wife executed three promissory notes of $300 each, given in settlement of the annual interest on the original note of $5,000, and delivered the same to the plaintiff. The second agreement was never recorded.

The complaint asked for a foreclosure sale of the property. Defendant Smith by answer alleged that on June 14, 1935, he purchased the mortgaged property for a valuable consideration from Lane and wife and received a quitclaim deed therefor which was duly recorded on the same day; that he thereupon took possession of the property and has at all times since held possession thereof. As an affirmative defense it is alleged that the mortgage sought to be foreclosed by the plaintiff was by its terms and the terms of the promissory note to become due on the first day of December, 1926; that the lien of the mortgage expired on the first day of December, 1934, and ceased to be of any force or effect under the provisions of section 8267, Revised Codes, more than six months before the defendant Smith purchased the real estate involved; that no affidavit renewing the mortgage, as required by section 8267, was made or filed in the

office of the county clerk of Gallatin county by the plaintiff, or by anyone representing her, within eight years and sixty days after the maturity of the debt, or at all, and that at the time defendant Smith purchased the mortgaged premises from Lane and wife, the mortgage of the plaintiff was not a subsisting lien against the land involved.

The reply alleged that defendant Smith purchased the land "with full actual knowledge" of the existence of the plaintiff's mortgage, and that he agreed with the defendants Lane and wife, "to take care of" the mortgage, and relieve the Lanes from all liability thereunder; that the Lanes quitclaimed the property to defendant Smith for $200 (which was subsequently agreed to be $600), with the understanding that Smith would take care of plaintiff's mortgage and protect the grantors from any deficiency judgment thereunder, and that without such promise or agreement by Smith the Lanes would not have conveyed the lands to Smith.

Findings of fact, conclusions of law and judgment went in favor of plaintiff, and this appeal followed.

The evidence is not before us, and hence we must assume that there was evidence to support the findings. (*Missoula Light & Water Co.* v. *Hughes,* 106 Mont. 355, 77 Pac. (2d) 1041.) The court found (1) that defendant Smith purchased the property on June 14, 1935, for a valuable consideration; (2) that he took a quitclaim deed to the property which was recorded on June 14; (3) that Smith paid $600 by check to Lane and wife when he received the deed, and agreed that Lane and wife might have possession of the premises until March 1, 1936; (4) that no affidavit of renewal of the mortgage was filed under section 8267, Revised Codes; (5) that there was no evidence to show that Smith at the time he purchased the property had knowledge of either of the extension agreements; and (6) that when Smith purchased the property he had "actual knowledge and constructive notice of the existence of the original mortgage executed by E. T. Lane and Hazel Lane" and of its assignment to Susan Bauch, "but that he did not have knowledge of the existence of either of the aforesaid extension agreements," and

that Smith "made no inquiry from Susan Bauch or from E. T. Lane or Hazel Lane, to ascertain if said mortgage had been renewed, and that in purchasing said property he relied upon the records of Gallatin county."

By conclusion of law the court found: "That by accepting a quitclaim deed from E. T. Lane and wife, the said defendant Wilber E. Smith, acquired thereby only the then right, title and interest of the said E. T. Lane and wife in and to the property described in said quitclaim deed, and took said property with implied notice of the outstanding unrecorded extension agreement executed by E. T. Lane and Hazel Lane, his wife, and Susan Bauch, bearing date January 25th, 1928, and took said property subject to the lien of the plaintiff's mortgage described in the plaintiff's complaint, as renewed and extended by said renewal agreement."

The propriety of this conclusion of law is the only point involved on this appeal. Smith's view is that since there was nothing of record extending the life of the mortgage under either section 8264 or 8267, it ceased to be a lien upon the property eight years after the maturity of the debt secured by it, or on December 1, 1934, and, therefore, when he purchased the property in June, 1935, he took it freed of the mortgage lien. Plaintiff contends that the mortgage was good and valid, as between the parties to it, by virtue of the extension agreements, and that, since Smith took only a quitclaim deed, he took simply the rights of his grantors, and, since the mortgage was good against the grantors, it was good against Smith, the grantee.

There is much discussion in the briefs of counsel as to the effect of the amendment made to section 8267 in 1933. (Chap. 104, Laws of 1933.) We need not here determine the question. Before amendment the mortgage ceased to exist as to purchasers without actual notice and for a valuable consideration. Certainly, since the amendment, purchasers for value and without notice of any extension take the property freed from the mortgage lien after the expiration of the eight years and sixty days. Here the life of the mortgage was extended, if at all, by an agreement executed under section 8264, Revised Codes. An

extension may be made under either section. (*Register Life Ins. Co.* v. *Kenniston,* 99 Mont. 191, 43 Pac. (2d) 251, and cases therein cited.) And, although the extension agreement was not recorded, it was valid between the parties. (Sec. 6938, Rev. Codes.) The question before us is, Were the extension agreements valid as against Smith, who was found to be a purchaser for value and without actual notice thereof?

This brings us to the main point in the case, namely: Does ▉ the fact that Smith took a quitclaim deed put him on notice that there may be unrecorded instruments affecting the title or constituting encumbrances on the property? In other words, can Smith be regarded as a bona fide purchaser without notice? The United States Supreme Court, by way of *dictum,* in the case of *May* v. *Le Claire,* 78 U. S. 217, 11 Wall. 217, 20 L. Ed. 50, held that one taking only a quitclaim deed cannot be regarded as a bona fide purchaser without notice. On the strength of the *May Case* it again announced the same conclusion, by way of *dictum,* in the case of *Alexander* v. *Rodriguez,* 79 U. S. 323, 12 Wall. 325, 20 L. Ed. 406. The holding in these cases, however, has been overruled in the later case of *Moelle* v. *Sherwood,* 148 U. S. 21, 13 Sup. Ct. 426, 429, 37 L. Ed. 350. In the last cited case the court said: ''There is in this country no difference, in their efficacy and operative force, between conveyances in the form of release and quitclaim, and those in the form of grant, bargain and sale.'' It further said: ''If in either case the grantee takes the deed with notice of an outstanding conveyance of the premises from the grantor, or of the execution by him of obligations to make such conveyance of the premises, or to create a lien thereon, he takes the property subject to the operation of such outstanding conveyance and obligation, and cannot claim protection against them as a bona fide purchaser. But in either case, if the grantee takes the deed without notice of such outstanding conveyance or obligation respecting the property, or notice of facts which, if followed up, would lead to a knowledge of such outstanding conveyance or equity, he is entitled to protection as a bona fide purchaser upon showing that the consideration stipulated has been paid, and that such

consideration was a fair price for the claim or interest designated. The mere fact that in either case the conveyance is unaccompanied by any warranty of title, and against incumbrances or liens, does not raise a presumption of the want of bona fides on the part of the purchaser in the transaction. Covenants of warranty do not constitute any operative part of the instrument in transferring the title. That passes independently of them. They are separate contracts, intended only as guarantees against future contingencies. The character of bona fide purchaser must depend upon attending circumstances or proof as to the transaction, and does not arise, as often, though, we think, inadvertently, said, either from the form of the conveyance, or the presence or the absence of any accompanying warranty." The court indicated clearly that examination of the records was all the inquiry that such a grantee must make. On this point it said: "In the present case, every available means of ascertaining the character of the title acquired, both at the time of his own purchase and at the time the purchase of his predecessors in interest were made, were pursued by the complainant. When he looked at the records of the county where the property was situated, he saw that the only deed executed by the patentee, the original source of title, was for property other than the premises in controversy. No mere speculative investment in the chance of obtaining a good title could, therefore, properly be imputed to him."

To the same effect is *United States* v. *California & Oregon Land Co.*, 148 U. S. 31, 13 Sup. Ct. 458, 37 L. Ed. 354, where the court expressly stated that the *Moelle Case* disaffirmed the prior decisions of that court. Other courts have divided on the question. The weight of authority and the better-reasoned and more recent cases support the view announced in the *Moelle Case*.

In 23 R. C. L. 242, it is said: "There is some conflict among the authorities as to whether the grantee in a quitclaim deed is a purchaser in good faith or whether the nature of conveyance charges him with notice of prior opposing equities. The rule

supported by the better reason is that the holder of a quitclaim deed is entitled to the same protection as one under a deed of bargain and sale or containing covenants of warranty. While the courts have expressed themselves to the effect that a quitclaim deed passes no more than the grantor's present interest, this expression has been used to state a general truth, and not as a construction of the Recording Acts, and so far as concerns the rights of a grantee under a quitclaim deed by virtue of the Recording Acts the tendency of modern decisions is uniformly in favor of the rule stated; and, indeed, in several of the states, the later cases overrule earlier cases holding the contrary view.''

The cases on the subject are annotated in 59 A. L. R. 633. It is there said: ''The rule in most jurisdictions is that a recorded quitclaim deed, when taken in good faith for a valuable consideration without notice, will prevail over a prior unrecorded deed.'' Cases are there cited from twenty-five states in support of the majority view. Cases from twelve states are cited in support of the minority view (p. 643). Among the cases from the states supporting the minority view is cited the case of *McAdow* v. *Black,* 6 Mont. 601, 13 Pac. 377. That case, after holding that the recorded mortgage there involved was valid, went further than necessary to a decision of the case and quoted from the case of *May* v. *Le Claire,* supra. The *May Case,* however, has been overruled by the cases of *Moelle* v. *Sherwood,* supra, and *United States* v. *California & Oregon Land Co.,* supra, and to the extent that the *McAdow Case* followed the *May Case,* it is hereby expressly overruled.

The case of *Wetzstein* v. *Largey,* 27 Mont. 212, 70 Pac. 717, is not in point because there the holder of the quitclaim deed had full notice of the prior unrecorded deed under which the grantee was holding possession of the property.

Since Smith purchased the property here for value and without notice or knowledge of the extension agreements and had his deed placed of record before the extension agreement was placed on record, and since the grantee in a quitclaim deed is entitled to claim as a bona fide purchaser, the case before us

is ruled by that of *Hastings* v. *Wise,* 91 Mont. 430, 8 Pac. (2d) 636. In that case we had under consideration section 6935, Revised Codes, reading: "Every conveyance of real property, other than a lease for a term not exceeding one year, is void against any subsequent purchaser or encumbrancer, including an assignee of a mortgage, lease, or other conditional estate, of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded." We held that whether the rights of the mortgagee under an extension agreement took precedence over a deed taken in good faith and for a valuable consideration while the mortgage was still in effect and subject to the mortgage depended upon whether the deed or the extension agreement was first recorded. For the greater reason, where the deed here was taken when the mortgage, so far as the records disclosed, was no longer valid, and when the deed was recorded before the extension agreement was placed of record, the rights of the grantee in the deed took precedence over the rights of the mortgagee. The court erred in entering judgment for plaintiff.

The judgment for plaintiff is set aside and the cause remanded with direction to enter judgment for defendant Smith.

MR. CHIEF JUSTICE JOHNSON and MR. JUSTICE ERICKSON concur.

MR. JUSTICE STEWART, concurring specially:

I concur in the majority opinion. Section 8267, Revised Codes, was enacted in 1913 with the manifest purpose of clearing the records of stale mortgages. The purpose was somewhat defeated by subsequent holdings of this court limiting the effect of the provision for renewal as against certain parties, all as shown by the cases cited in the annotations appearing after the section in the Revised Codes.

Some confusion arose by reason of the existence of section 8264, which provides for the extension of mortgages by the parties. After the decision in the case of *Reed* v. *Richardson,*

94 Mont. 34, 20 Pac. (2d) 1054, in 1933, the legislature amended section 8267 in an endeavor to make the provisions for renewal, and the effect of failure to renew, more explicit and certain. That amendment omitted certain of the wording of the old section and substituted new wording. The old provision was: ''Every mortgage of real property made, acknowledged, and recorded as provided by the laws of this state, is thereupon good and valid *as against the creditors of the mortgagor or owner of the land mortgaged, or subsequent purchasers or encumbrancers,* from the time it is so recorded until eight years after the maturity of the .entire debt or obligation secured thereby, and no longer,'' unless renewed, etc. The new provision reads as follows: ''Every mortgage * * * made, acknowledged, and recorded, as provided by the laws of this state, *shall be good as against all from the time it is so recorded until eight years* after the maturity of the entire debt or obligation secured thereby and no longer,'' unless renewed, etc.

It is beyond question that the legislature intended to make the provision more comprehensive and inclusive. As amended, the section does not do violence to section 8264, supra. The two sections are *in pari materia.* If no action is taken under 8264, then a mortgage must be renewed under 8267 within eight years from the original due date, but if an extension is made and recorded under 8264 in accordance with the terms thereof, the time of the maturity of the debt secured having been extended and moved forward, necessity for renewal under 8267 is automatically deferred and moved forward until eight years from the new due date. So it must be understood that the two sections are not in conflict at all.

It is argued that the renewal extension under section 8264 might be good as between the parties without recording. This we do not need to decide here; but certainly an unrecorded extension could not avail to charge anyone other than the parties with notice thereof. Here the controversy does not occur between the parties, or was not, in actual result, between the origi-

nal parties, as the majority opinion points out. Therefore, the result reached in that opinion is obviously correct.

MR. JUSTICE MORRIS:

I dissent. The vital question involved in the controversy is whether Smith had notice of the extension agreement between the mortgagor and the mortgagee when the mortgagor conveyed the land involved to Smith.

Section 6938, Revised Codes, provides: "An unrecorded instrument is valid as between the parties and those who have notice thereof." Section 8780 provides: "Notice .is: 1. Actual —which consists in express information of a fact. 2. Constructive—which is imputed by law." Section 8781 provides: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact has constructive notice of the fact itself, in all cases in which, by prosecuting such inquiry, he might have learned such facts."

The majority rule referred to in the majority opinion, as given in *Phoenix Title & Trust Co.* v. *Old Dominion Co.,* 31 .Ariz. 324, 253 Pac. 435, 59 A. L. R. 625, 632, is to the effect that priority in recording of a quitclaim deed is not alone sufficient to defeat a subsequent bona fide conveyance or encumbrance, but the quitclaim deed must, in addition to prior recordation, have been taken in good faith for a valuable consideration, and without notice. There is, therefore, a difference of opinion as to what one obtains by a quitclaim deed, but there is no division of opinion that the conveyance by a quitclaim deed must be taken in good faith, for value, and without notice, in order to defeat a prior unrecorded lien or mortgage or an extension agreement such as is here involved.

One who takes by quitclaim deed assumes all the risk relative to prior encumbrances or prior conveyances. He has nothing to show for his title but the quitclaim deed, and no recourse as to any other person or persons for any defects in the title conveyed. Any person of common sense and ordinary prudence surely takes such conveyance with full knowledge that he as-

sumes all the risks and all the defects that exist in the title of his grantor.

The general rule is given in 27 R. C. L. 731, section 497. One may not depend upon the records alone if facts have come to him that would lead a prudent man to further inquiry. "The fact that a purchaser claims under a quitclaim deed may not preclude him from protection as a bona fide purchaser; it is a circumstance entitled to consideration in determining whether his purchase was in good faith or not." (Id., sec. 500, p. 735.)

In *Yale Oil Corp.* v. *Sedlacek,* 99 Mont. 411, 419, 43 Pac. (2d) 887, 890, we said: "Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it." One who has reason to believe there is a defect in his title should be held to have notice of that which prudent inquiry would reveal.

Upon the record as a whole, deficient as it is, it taxes credulity beyond the point of common sense to presume that Smith did not have notice that he was purchasing land by a conveyance which did not pass clear title.

---

ON MOTION FOR REHEARING.

(Opinion filed July 15, 1939.)

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff's motion for rehearing points out that while we have overruled the case of *McAdow* v. *Black,* 6 Mont. 601, 13 Pac. 377, we have made no mention of the cases of *Lynde* v. *Wakefield,* 19 Mont. 23, 47 Pac. 5, *Butte Hardware Co.* v. *Frank,* 25 Mont. 344, 65 Pac. 1, *Gibson* v. *Morris State Bank,* 49 Mont. 60, 140 Pac. 76, *Lindeman* v. *Pinson,* 54 Mont. 466, 171 Pac. 271, and *Johnson* v. *Kaiser,* 104 Mont. 261, 65 Pac. (2d) 1179, containing statements either by way of *dictum* or otherwise similar to that made in *McAdow* v. *Black,* supra.

In most of those cases the statement was justified by the facts. No doubt the grantee in a quitclaim deed takes the property subject to all defects of title appearing of record, and in that sense takes no better title than the grantor had. This is true of any form of deed. But where the record title of the grantor is good, and the infirmity of his title is made to appear from unrecorded instruments, a quitclaim deed to a purchaser for value without notice or knowledge of the unrecorded instruments passes as good a title as any other deed. General statements appearing in the above cases to the contrary are overruled.

In the original opinion we made this statement regarding the case of *Moelle* v. *Sherwood*, 148 U. S. 21, 13 Sup. Ct. 426, 37 L. Ed. 350: "The court indicated clearly that examination of the records was all the inquiry that such a grantee [a grantee by quitclaim deed] must make." Counsel for respondent in his petition for rehearing questions the correctness of that statement. Further consideration of the *Moelle Case* causes us to reaffirm the statement made in our original opinion, but with this explanation: In that case the land was vacant and unoccupied when the complainant Sherman purchased it. But what the condition was in that respect when Dosh, the predecessor in interest of Sherwood, who took the property by quitclaim deed from Bittinger and which it was contended caused a break in the chain of title, the record of that case does not disclose. But if the fact that Lane and his wife were in possession of the property at the time Smith purchased it, was constructive notice to the world of some interest therein by them, then examination of the records finding that Lane was the owner of the property would satisfactorily explain his possession. There is nothing in the record to disclose that Smith was not an innocent purchaser for value.

The petition for rehearing is denied.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES STEWART and ERICKSON concur.

MR. JUSTICE MORRIS:

I am of the opinion that the rehearing should be granted.