TIFFANY, Respondent, *v.* UHDE et al., Appellants.

No. 8940.

Submitted March 8, 1950. Decided March 21, 1950.

216 Pac. (2d) 375.

Mr. Mark H. Derr and Mr. John D. French, both of Polson, for appellants. Mr. Derr and Mr. French argued orally.

Mr. Lloyd I. Wallace and Mr. F. N. Hamman, both of Polson, for respondent. Mr. Hamman argued orally.

MR. CHIEF JUSTICE ADAIR:

Appeal from a judgment.

This suit involves lands bordering on Flathead lake in Lake county, Montana. The tract claimed by the plaintiff, Nellie Tiffany, is described in her complaint by metes and bounds.

The complaint, filed June 6, 1949, alleges: That plaintiff has been and is the owner, in possession of and entitled to the exclusive possession of the described tract; that neither the defendant F. R. Uhde nor the defendant James Uhde has any right, interest, estate or title in or to said real estate; that shortly prior to the commencement of this action plaintiff had the lands surveyed and the boundary lines marked with stakes by the county surveyor of Lake county; that thereafter plaintiff employed workmen to dig post holes and set fence posts on her own land along and within the surveyed boundary line; that on May 29, 1949, while plaintiff's workmen were so engaged in setting fence posts on her land and while a picnic was in progress on plaintiff's land, the defendants, driving a large truck upon plaintiff's land, ran over and knocked down plaintiff's fence posts and informed her that they "would continue so to do and plaintiff could not so build her fence;" that because of such oppressive and malicious conduct and threats on the part of defendants and because of plaintiff's fears that defendants will execute their threats and continue to harrass and annoy her, she is precluded from constructing her fence; that irreparable damage has resulted to plaintiff from such acts which have interfered

in her use and occupation of her property; that she has no plain, speedy and adequate remedy at law; and that she "brings this action to enjoin the defendants from interfering with her use and occupation of her own property, and erecting necessary fences thereon, and to avoid a multiplicity of lawsuits." The prayer is that defendants be temporarily enjoined and restrained from in any manner interfering with her and her use and occupation of her property, or the building of necessary fences thereon; that upon final hearing the defendants be permanently enjoined and that she have judgment for $200 actual damages and $400 exemplary damages "and such other and further relief as may be proper in the premises."

Citation, directed to defendants and an order to show cause, issued upon the filing of the complaint in response to which defendants filed certain affidavits wherein they claim title to the described real property by adverse possession. Following the hearing on the citation and order to show cause, the court issued a temporary restraining order enjoining defendants from interfering with plaintiff's use and occupation of her property or with the building of fences thereon.

Defendants then interposed a general demurrer to the complaint. The demurrer was overruled and defendants answered denying all the allegations of the complaint. Also by way of a separate defense and counterclaim, defendants alleged that in the year 1932 the defendant Fred R. Uhde, and Faith M. Uhde, his wife, entered into a contract to purchase another described tract of land; that before purchasing such property their predecessor in interest caused same to be surveyed and the boundary line between such property and that claimed by plaintiff be fixed by one Salzman, then county surveyor of Lake county; that in 1932 the defendant, Fred R. Uhde, as contracting purchaser, and plaintiff's predecessor in interest "erected a fence on said boundary line so surveyed for the purpose of marking the dividing line between and separating" the two tracts; that at all times since a fence has been maintained on said boundary line and that since June 1932 defendant Fred R. Uhde and wife

510

and their predecessor in interest have kept their premises enclosed by a fence and "have been in the open, notorious, exclusive and continuous, uninterrupted, and adverse possession of all said premises * * * and said defendant and his wife have paid all taxes which were levied and assessed against said premises." The prayer is "that plaintiff take nothing by her action, that the Court decree that the plaintiff has no estate, right, title or interest in any property lying northeasterly of the present fence between the properties * * * and enclosed by the fence of said defendant and his wife; that the defendants have in recovery the costs of suit herein and for other and further equitable relief as to the Court may seem proper."

The plaintiff replied, denying the allegations of the answer, and upon the issues so presented the cause was tried to the court sitting without a jury.

The judgment roll sets forth the minutes of the court which disclose: That sixteen witnesses testified on behalf of plaintiff; that twelve witnesses testified on behalf of defendants; that plaintiff introduced in evidence two maps of three surveys of the boundary lines made by the county surveyor of Lake county and an abstract of title and that defendants introduced in evidence a deed and four photographs of the fence and buildings on the premises.

At the close of all the evidence plaintiff's counsel announced that he did not care to submit proposed findings and conclusions but was agreeable for the court to make its own findings and conclusions, while defendants offered proposed findings and conclusions.

The trial court, declining to adopt those proposed by defendants, made its own findings of fact and conclusions of law, indicating that plaintiff's proof established the allegations of her complaint and specifically found plaintiff to be the owner of the tract described in her complaint; that defendants are the owners of the land to the northeast of the plaintiff's tract as platted and shown on plaintiff's exhibit 1, designated as the Bouton plat, and that the boundary in dispute is along the

course marked "N60° O'W 144.4'" shown on the plat by a red line designated A to B.

The trial court also found: That the surveyor, H. B. Bouton, "put his survey stakes along the line A to B for such 144.4 feet;" that "these stakes quickly disappeared, and as the plaintiff wanted to fence the boundary line, Bouton replaced the stakes;" that on May 29, 1949, plaintiff had two men digging holes and setting posts for a fence on her land and within the boundary line A to B; that on said day a "neighborhood gathering or picnic" was being held at plaintiff's place and that while same was in progress, "the defendants came down the hill with a heavy truck, the defendant James Uhde driving, with another man in the seat beside him, and the defendant Fred R. Uhde standing in the truck and in a loud voice yelling to the working men and others to get off his land or they would be run over;" that defendants "went down the hill, backed the truck up the hill and down again, almost running over the workers, tearing out five or six posts that had been set in the ground and knocking over the fence posts near the road;" that in so doing "defendants were trespassers on plaintiff's land;" that defendants' "acts were wanton, oppressive, unlawful and malicious, done to frighten, vex and annoy the plaintiff, her guests and workers," to her actual damage in the amount of $24, being the amount she should pay the two workmen, and that "she is also entitled to punitive or exemplary damages against the defendants:" that "the correct and true boundary between the plaintiff's land and that of the defendants is as shown by the red line A to B on the plat of H. B. Bouton, being Plaintiff's Exhibit 1, and all the lines, distances and directions thereon are true and correct; and as to that distance of 144.4 feet from A to B, that is the correct boundary between these parties; and the present rail or pole fence some 7 feet southwest is entirely on the plaintiff's land, and the defendants have no right to maintain it there and it should be removed."

The trial court's conclusions are: That the plaintiff is entitled to judgment and decree of this court establishing the boundary

between the property of the respective parties as set out in its findings; that plaintiff is entitled to judgment against the defendants for actual damages of $24 and punitive damages of $100 and for all her taxable costs.

Judgment and decree, incorporating the trial court's findings and conclusions, and conforming thereto, was rendered and entered. This is an appeal from such judgment.

Defendants' only assignment of error is that: ''The Court was without jurisdiction in determining title, ownership and establishing the boundaries to the realty in question, by its findings, conclusions and judgment, in that the suit was one in injunction only, forbidding an adjudication of title, ownership, or establishment of boundaries of realty, and to that extent the findings, conclusions and judgment are not supported by the pleadings or by law, and are erroneous and should be reversed.''

In Slette v. Review Publishing Co., 71 Mont. 518, 230 Pac. 580, 581, the court said: ''In an action to quiet title it is enough to aver in general terms the title of the plaintiff, and, in equally general language, that the defendant asserts some title adverse to him. (Citing cases.)'' See also, Thompson v. Moore, 8 Cal. (2d) 367, 65 Pac. (2d) 800, 109 A. L. R. 1027.

In her complaint plaintiff claims title to the land and avers acts of the defendants denying her right to the use of the property and showing that they claim the land adversely to her. Clearly the complaint states a cause of action to quiet title to the land which plaintiff claims to own and on which she proposes to build a line fence.

In their affidavits on the order to show cause and also in their answer defendants claim title to the land involved by adverse possession. This claim the plaintiff denied. Thus do the pleadings squarely present for determination the issue of title, ownership and boundaries.

In Grosfield v. Johnson, 98 Mont. 412, 39 Pac. (2d) 660, 664, involving a boundary line and an injunction, the court applied the rule that '' 'a court of equity will, when its jurisdiction has been invoked for an equitable purpose, proceed to de-

termine any other equities existing between the parties connected with the main subject of the suit, and grant all relief necessary to an entire adjustment of such subject'.''

In actions to quiet title the rule is well settled that when ▮ necessary to maintain the status quo pending trial of the issues and final determination of the cause a temporary injunction may be granted in the discretion of the court. Gibbons v. Huntsinger, 105 Mont. 562, 74 Pac. (2d) 443; City of Los Angeles v. Los Angeles F. & M. Co., 152 Cal. 645, 93 Pac. 869, 1135; Castelbury v. Harte, 15 Idaho 399, 98 Pac. 293; R. C. M. 1947, sec. 93-4204; 51 C. J., ''Quieting Title,'' sec. 153, p. 214.

This court has repeatedly held that a party appealing from a ▮ final judgment if he desires to present on the appeal the proceedings had at the trial must have the same incorporated in the bill of exceptions as provided in R. C. M. 1947, sec. 93-5505. Miners Nat'l Bank v. Proulx, 119 Mont. 456, 463, 176 Pac. (2d) 267.

The record on this appeal contains no bill of exceptions but ▮ only the judgment roll. There being no evidence in the transcript, the presumption must be indulged that the evidence introduced at the trial supports the trial court's findings and judgment. Aitken v. Lane, 108 Mont. 368, 92 Pac. (2d) 628; State ex rel. Mercer v. Woods, 116 Mont. 533, 155 Pac. (2d) 197. The judgment is affirmed.

ASSOCIATE JUSTICES ANGSTMAN, FREEBOURN, METCALF and BOTTOMLY, concur.